**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 92-3235
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GERALD ELWOOD, a/k/a Nap,
WILLIAM BARNES, JR. and
ERNEST MARRERO,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

August 23, 1993

Before POLITZ, Chief Judge, DUHÉ, Circuit Judge, and MAHON,[*]
District Judge.

POLITZ, Chief Judge:

On this appeal we consider the **Beechum**[1] findings made on
remand by the trial court, together with a sentencing issue raised
by Gerald Elwood which was not reached on the prior appeal because
of the remand. The operative facts are detailed in our prior
opinion, 993 F.2d 1146 (5th Cir. 1993). For present purposes we

_____

[*]    District Judge of the Northern District of Texas, sitting
by designation.

[1]    **United States v. Beechum**, 582 F.2d 898 (5th Cir. 1978)
(_en banc_), cert. denied, 440 U.S. 920 (1979).

note merely that Elwood and three other males departed his hotel room in LaPlace, Louisiana with over 2000 grams of cocaine. Two carried the cocaine in a car while Elwood and another, both carrying firearms, followed in an armor-plated pickup truck. When police stopped the car for a traffic violation, Elwood pulled the truck directly behind the police vehicle. All four males were arrested and Elwood was ultimately convicted of possession of cocaine with intent to distribute, conspiracy to possess with intent to distribute, and using and carrying a firearm in relation to the drug trafficking offenses. We now affirm Elwood's convictions but for the reasons assigned vacate his sentences and remand for resentencing.

## I.  The 404(b) Evidence

Prior to trial the government noticed its intent to introduce certain 404(b)[2] evidence against Elwood to prove his intent to participate in the narcotics offenses and to use firearms in connection therewith.[3]  Elwood moved *in limine*, seeking the

---

[2]  Rule 404(b) of the Federal Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial.

[3]  The evidence included several weapons, weapon boxes, ammunition, a bullet-proof vest, a glass tube and spoon coated with

2

exclusion of the evidence and asking the court to make record findings regarding the probative value/prejudicial effect of the proposed evidence as required by **United States v. Robinson.**[4] The district court admitted the evidence, but the **Robinson** findings were not made on the record. Tracking **United States v. Anderson**,[5] we remanded for **Beechum/Robinson** findings.[6]

In accordance with our instructions, the district court received additional briefing and conducted a hearing on both the admissibility of the evidence and whether any error in its

---

cocaine residue, and some plastic bags, all seized from Elwood's home about a year before this offense (hereinafter the "Rackert Street evidence").

[4] 700 F.2d 205 (5th Cir. 1983).

[5] 933 F.2d 1261 (5th Cir. 1991).

[6] We instructed the district court as follows:

> If the court holds that the evidence meets [the] first **Beechum** step as to relevancy, it then must decide whether the evidence's probative value was substantially outweighed by its prejudicial effect. If the court determines that the probative value was substantially outweighed, then the court must decide whether there is a reasonable possibility that the evidence affected the outcome of the case. In making this determination, the court should consider the effect of the jury instruction and the government's closing argument. If the court finds that the evidence improperly affected the outcome of the case, the court must order a new trial. If the court finds that the evidence did not improperly affect the outcome of the case, "[t]he trial judge shall certify to us his findings and conclusions. The record shall be supplemented by the on-the-record determination herein prescribed, and by any materials submitted by the parties to the district court. Following such filing, the clerk will set a schedule for supplementary briefing and the matter will be returned to this panel for disposition."

993 F.2d at 1153-54 (quoting **Anderson**, 933 F.2d at 1277; further citations omitted).

3

admission improperly affected the outcome of the trial.[7] The court concluded that the evidence was admissible under Rule 404(b) and, alternatively, given the substantial evidence of Elwood's guilt, any error from the admission of the evidence was harmless.

We apply a highly deferential standard to a trial court's evidentiary rulings, reversing only for an abuse of discretion.[8] **Beechum** details this circuit's procedure for admitting 404(b) evidence: "First, it must be determined that the extrinsic evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403."[9]

<u>Relevance</u>

Given that his counsel readily conceded during opening statement that Elwood possessed a firearm, the only question was his intent to participate in the cocaine distribution conspiracy. The district court found the 404(b) evidence probative of this fact. "In determining the probative value of extrinsic evidence, the court should consider the overall similarity between the extrinsic and charged offenses, because 'the probative value of the extrinsic evidence correlates positively with its likeness to the

---

[7] From its chambers file on this case, the district court provided an internal bench memorandum which contained its findings at a sidebar conference which was not transcribed.

[8] **Anderson**.

[9] 582 F.2d at 911.

4

offense charged.'"[10]  The court *a` quo* deemed important the fact that the Rackert Street evidence consisted of several weapons and ammunition in close proximity to evidence indicative of drug distribution, specifically, a spoon with cocaine residue, a cellular phone, plastic baggies, and a scale.  In this respect, the Rackert Street evidence was similar to the evidence supportive of the charged offenses SQ a scale, plastic baggies, and a cellular phone were found either at the arrest scene or in the hotel room; these items and the drugs were in relative close proximity to the firearms in Elwood's truck.  This evidence tends to negate Elwood's assertion that he knew nothing of the drugs and that his possession of a firearm was in no way related to the possession of the two kilos of cocaine in the car he was following closely.  We find no error in the district court's determination that this evidence had some relevance to the issue of intent.

<u>403 Balance - Probative Value/Prejudice</u>

We also give great deference to the district court's determination of the second **Beechum** inquiry SQ whether the probative value of the evidence is outweighed by the risk of unfair prejudice.[11]  In addition to its probative value, the Rackert Street evidence had obvious prejudicial effect.  The sheer quantity of weapons and ammunition found at the Rackert Street residence suggested a disturbing level of potential violence.  The indepen-

---

[10]  **United States v. Moye**, 951 F.2d 59, 62 (5th Cir. 1992) (quoting **Beechum**, 582 F.2d at 915).

[11]  **Moye; Beechum.**

5

dent prejudicial effect, however, was diminished by, among other things, Elwood's admissions on the stand that he owned several weapons, including ".357s, nine millimeters, . . . an AK-47," and a "riot shotgun." In addition, there was significant evidence connecting Elwood to the charged offenses. Finally, the district court properly instructed the jury on three occasions of the limitations in the consideration of the Rackert Street evidence.[12] In light of the other evidence and the limiting instructions, we find no 403 breach in the admission of the 404(b) evidence.

## II. Assessment of Adjustment for Leadership Role

Elwood received a two level upward adjustment of the offense level for his leadership role in the criminal activity. He timely objected to the presentence report, contending that there was no evidence at trial supporting the adjustment and that "[w]hile the

---

[12] The court cautioned:

Ladies, this officer is going to testify and SO from evidence that is going to be presented, so you may hear evidence of acts of the defendant, Gerald Elwood, which may be similar to those charged in the indictment in this case of which were committed on another occasion. You must not consider any of this evidence in deciding if the defendant, Gerald Elwood, committed the acts charged in this indictment; however, you may consider this evidence for other very limited purposes. You may consider evidence of the similar act allegedly committed on another occasion to determine whether the defendant, Gerald Elwood, had the state of mind or intent necessary to commit the crime charged in this indictment. This is the limited purpose for which any evidence of other similar acts may be considered. Further, this evidence may be considered by you only in relation to the charges against Gerald Elwood. You may not consider it when weighing the evidence regarding charges against William Barnes and Ernest Marrero.

6

government will have the opportunity at sentencing to establish that Elwood was an organizer, leader . . . of the alleged criminal activity, its mere allegation that he played such a role is not sufficient to warrant the two level adjustment."  At sentencing, the government presented no additional evidence in support of the adjustment; the record contains only the probation officer's amendment to the PSR stating:  "In discussing the relative roles of the defendants in this case with the government and the DEA, it was determined that Elwood should receive a role adjustment pursuant to Section 3B1.1(c)."  Based on the PSR the trial court sentenced Elwood to 121 months on counts 1 and 2, and a consecutive 60-month sentence on the gun count.  Elwood contends that this adjustment was improper; the government, on the other hand, contends that the district court's sentencing was proper because it was based upon a reliable source SQ the presentence report.[13]

Confronted with an objection to the findings in the PSR, "the party seeking an adjustment in the sentence level must establish the factual predicate justifying the adjustment" by a preponderance of relevant and sufficiently reliable evidence.[14]  In this case, the party seeking the adjustment is the government.  "[A] presentence report generally bears sufficient indicia of reliability to be considered as evidence by the trial judge in making the factual determinations required by the guidelines."[15]  In this case,

_____

[13] **United States v. Alfaro**, 919 F.2d 962 (5th Cir. 1990).

[14] **Alfaro**, 919 F.2d at 965.

[15] **Id.** at 966.

7

however, the PSR lent no support for the essential factual determinations about Elwood's alleged leadership role; the PSR merely gave a recitation of the conclusions of the DEA and the prosecutor.

We recently addressed a similar problem in **United States v. Patterson**[16] in which the government attempted to support an offense level increase for the defendant's role as a manager or supervisor of a conspiracy based upon the following statement in the PSR: "Information from [the AUSA] indicates that the defendant and co-defendant . . . managed and supervised other persons who worked for them as they carried out their illegal activities." We vacated Patterson's sentence finding that "the unsworn assertions of the Government's attorney do not provide, by themselves, a sufficiently reliable basis on which to sentence the defendant."[17] Bald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR. As in **Patterson**, we must vacate and remand for a factual determination whether Elwood in fact had the requisite leadership role in the offense to warrant the adjustment.[18]

---

[16] 962 F.2d 409 (5th Cir. 1992).

[17] 962 F.2d at 415 (citing **United States v. Johnson**, 823 F.2d 840, 842 (5th Cir. 1987)).

[18] We note that in **United States v. Williams**, 117 L.Ed.2d 341 (1992), the Supreme Court instructed that "in determining whether a remand is required under [18 U.S.C.] § 3742(f)(1), a court of appeals must decide whether the district court would have imposed the same sentence had it not relied upon the invalid factor or factors." **Id.** at 355. The government points to the following trial evidence to support the adjustment: Room 102 was Elwood's room; he was the oldest defendant; he displayed intelligence,

For the foregoing reasons, we AFFIRM the convictions of Gerald Elwood but VACATE his sentences and REMAND for resentencing.

---

articulateness, and savvy on the witness stand; Dennison told police when he was stopped that he had been visiting his Uncle Gerald; and Elwood admitted that the cash found in the hotel room was his. Elwood correctly points out that in passing sentence the judge accepted the PSR and did not suggest that he relied on a recollection of the trial evidence. After reviewing the entire, albeit cold, trial record we simply cannot determine whether the assessment for a leadership role would have been imposed by the district court if it had not erroneously relied upon the statement in the PSR. The trial evidence relied upon by the government does not compel the conclusion that the leadership role adjustment was warranted.