32 F.3d 573
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ruben Albert RUIS, Defendant-Appellant.
 No. 93-50212.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1994.
Decided Aug. 8, 1994.
 
 Appeal from the United States District Court for the Southern District of California, No. CR-92-00933-02-GT; Gordon Thompson, Jr., District Judge, Presiding.
 S.D.Cal.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before: BROWNING and FLETCHER, Circuit Judges, and FITZGERALD,* District Judge
 MEMORANDUM**
 Appellant Ruben Ruis pled guilty to one count of possessing cocaine with intent to distribute and one count of conspiracy to possess cocaine with intent to distribute. Ruis reserved the right to appeal the district court's denial of his motion to suppress evidence. On appeal, Ruis contends that the district court erred in refusing to hold an evidentiary hearing on that motion. He also argues that DEA agents lacked probable cause to arrest him, and that they violated his Fourth Amendment rights when they inserted a key they found on his person into the lock on a storage locker. We reject each of these arguments.
 Ruis also argues that the district court erred in failing to hold an evidentiary hearing before imposing two two-level enhancements--one for obstruction of justice and one for playing an aggravating role in the charged offense. Because the obstruction of justice enhancement was erroneous on its merits, we vacate the sentence and remand for resentencing.
 
 BACKGROUND
 
 1
 In June 1992, U.S. Customs Inspector Mark Wilkerson was working undercover as a bribable customs inspector. In exchange for a $1,000 bribe from Ruis's codefendants Reyes and Dolores-Rodriguez, Wilkerson agreed to listen to an offer to join a drug smuggling operation. He then agreed to allow drug-laden vehicles to pass through his lane at the port of entry in Tecate, California. He was to receive $10,000 for each vehicle he let into the country.
 
 
 2
 On June 28, 1992, Reyes, Dolores, and Valdez (another codefendant) met Wilkerson at a restaurant and gave him $5,000 as part payment for an upcoming shipment of marijuana. On July 8, 1992, Dolores met Wilkerson at a grocery store and gave him a piece of paper with a description of the load vehicle: a blue 1981 Buick with California license plate number 1BCP099. Wilkerson told Dolores that he would be on duty at 10:30 a.m. that day.
 
 
 3
 At 10:33 a.m., a car matching the description given by Dolores came into Wilkerson's lane, and Wilkerson let it through. Dolores was driving. Police surveillance units followed Dolores to a K-Mart in El Cajon, California. There, he was soon met by Valdez; Valdez had just driven through Wilkerson's lane in a blue Ford Ltd. With Valdez was another codefendant, Galvez. The three men went into the K-Mart, and Dolores gave a black handbag to Valdez and Galvez, who put it into the Ford. Then all three apparently left, leaving the blue Buick behind.
 
 
 4
 Shortly thereafter, a yellow Oldsmobile came to the K-Mart and parked next to the Buick. In the Oldsmobile were codefendant Maese and appellant Ruis. Maese got out of the Oldsmobile and into the Buick, which he drove to a Shurgard Self-Storage. Ruis followed. After Mease had parked the Buick in one of the storage units, he got into the yellow Oldsmobile driven by Ruis; the two then drove off from the self-storage facility to a Love's restaurant. They were eventually met there by one Carlos Sanudo. Several hours later, as they were leaving the restaurant, all three men were arrested.
 
 
 5
 Ruis was searched after his arrest; officers found a set of keys. They took these keys back to the Shurgard, and found that one of them opened the lock to the storage unit in which the Buick had been parked. The police relocked the storage unit without opening the door.
 
 
 6
 On the basis of the information above, DEA agents sought and obtained a warrant authorizing a search of the storage space and the blue Buick. Inside the trunk of the Buick, they found approximately 150 kilograms of cocaine. Inside the yellow Oldsmobile, which they searched incident to Ruis's arrest, they found a receipt from the Shurgard.
 
 
 7
 On July 14, 1992, a grand jury returned an indictment charging Ruis and seven others with conspiracy to possess with intent to distribute narcotics. On July 22, 1992, a superseding indictment was filed, adding various other charges.
 
 
 8
 On August 31, 1992, Ruis filed a motion to suppress evidence. That motion was denied without an evidentiary hearing. On October 2, 1992, Ruis entered into a conditional plea agreement, pleading guilty to conspiracy and possession charges and reserving his right to appeal the denial of his suppression motion. On March 1, 1993, Ruis was sentenced to 240 months in custody and five years of supervised release. His sentence was based in part on two two-level enhancements: one for obstruction of justice, and one for playing an aggravating role in the charged crimes.
 
 DISCUSSION
 A. Right to an Evidentiary Hearing
 
 9
 General Order 384, which is in force in Judge Thompson's courtroom, provides that
 
 
 10
 [w]here a criminal motion requires a predicate factual finding, the motion shall be supported by a declaration.... The court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition.... Each declaration shall set forth, under penalty of perjury, all facts then known and upon which it is contended the motion should be granted or denied.
 
 
 11
 Pursuant to this rule, Ruis submitted the following affidavit:
 
 
 12
 On July 8, 1992, I drove Mr. Richard Maese to the location of a parked car in the K-Mart Shopping Center on Fletcher Parkway. I dropped Mr. Maese off at that location where he entered a blue Buick. Later, Mr. Maese and I met at Love's Restaurant and remained there for approximately two hours until being joined by Mr. Carlos Sanudo. When the three of us emerged from the restaurant, we were arrested by agents of the Drug Enforcement Administration, and I was searched on the scene following that arrest. At no time did I violate any traffic laws or act in any manner which would give the agents cause to arrest me. For that reason, I believe that my arrest was illegal and in violation of the Fourth Amendment to the United States Constitution.
 
 
 13
 CR-32 (paragraph breaks omitted). The district court concluded that this affidavit did not meet the requirements of G.O. 384, and accordingly, without holding an evidentiary hearing, denied Ruis's motion to suppress. We review the denial of an evidentiary hearing on a motion to suppress for abuse of discretion. United States v. DiCesare, 765 F.2d 890, 895 (9th Cir.) , amended, 777 F.2d 543 (9th Cir.1985).
 
 
 14
 Ruis argues first that G.O. 384 is invalid. Ruis relies on United States v. Terry, 11 F.3d 110, 113 (9th Cir.1993), in which this court held that Judge Thompson erred by enforcing G.O. 384 against a defendant where neither the defendant nor his attorney had notice of the rule. Ruis does not and could not argue that his attorney too lacked notice of the rule: Ruis's attorney is the same person as the Terry attorney, and that attorney learned about G.O. 384 through Terry itself (the earlier case).
 
 
 15
 Instead, Ruis argues that G.O. 384 cannot be enforced against him because he was not given an opportunity to comment on it. Ruis correctly cites Terry for the proposition that "district courts may prescribe rules for conduct of their business ... only after providing appropriate public notice and an opportunity to comment." 11 F.3d at 113. This statement, however, cannot be construed to mean that every defendant must be given an opportunity to "comment" on a local rule at the time that the rule is applied against him. That would largely defeat the purpose of having rules in the first place. At most, the statement in Terry means that district courts should accept comments from the public while considering the promulgation of a new rule. Ruis provides no evidence showing that Judge Thompson failed to do this. Thus, Ruis's Terry-based argument fails.
 
 
 16
 Moreover, even if G.O. 384 were invalid, Ruis would not for that reason be entitled to an evidentiary hearing. When a defendant has not established the existence of a factual issue, the court need not hold an evidentiary hearing. See United States v. Ayers, 924 F.2d 1468, 1481 (9th Cir.1991) (no evidentiary hearing necessary where putative dispute of fact was created through inadmissible evidence); United States v. Walczak, 783 F.2d 852, 857 (9th Cir.1986) (no evidentiary hearing necessary where putative dispute of fact was in reality a dispute of law).[1] United States v. Batiste, 868 F.2d 1089 (9th Cir.1989), cited by Ruis, is not contrary. In Batiste, this circuit held only that the district court did not abuse its discretion by ordering an evidentiary hearing in the absence of affidavits creating a factual dispute. Batiste did not hold that the district court was required to hold such a hearing. Id. at 1091-92.
 
 
 17
 Ruis's second argument is that the affidavit he submitted did create a dispute of fact. He points out that while the search warrant affidavit stated that he followed Maese from the K-Mart to the Shurgard and picked Maese up there after Maese had locked the blue Buick into the storage space, his own affidavit makes no mention of these events.
 
 
 18
 Crucially, however, Ruis did not deny that he drove with Maese to the Shurgard and picked Maese up there. This court has stated that an evidentiary hearing on a motion to suppress "ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." Walczak, 783 F.2d at 857. Ruis's affidavit cannot be "definite, specific, [and] detailed" when it entirely fails to mention the facts purportedly in dispute.[2] The failure of the affidavit to clearly outline a factual issue is especially notable in light of G.O. 384's instruction to set forth "all facts ... upon which it is contended the motion should be granted or denied" (emphasis added).
 
 
 19
 Ruis argues that the effect of the district court's reading of his affidavit is to impose an onerous burden on criminal defendants who seek evidentiary hearings: they must "specifically contradict all facts contained in the discovery reports that could possibly give the [police] probable cause to arrest." Appellant's Opening Br. at 12. But Ruis did not have to go so far in order to show that he was entitled to a hearing: he had only to positively identify as such the untruths which he now suggests the government advanced. Because he did not do so,[3] we conclude that the district court did not abuse its discretion in declining to hold an evidentiary hearing.
 
 B. No Probable Cause to Arrest
 
 20
 Ruis next argues that even taking the government's version of the facts as true, the police did not have probable cause to arrest him. We review de novo the district court's finding of probable cause. United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), cert. denied, 498 U.S. 825 (1990).
 
 
 21
 Ruis relies on such cases as Ybarra v. Illinois, 444 U.S. 85 (1979), and United States v. Robertson, 833 F.2d 777 (9th Cir.1987), for the proposition that mere proximity to criminals and to crime does not give rise to probable cause.
 
 
 22
 The government responds that there was more than mere proximity here. Ruis drove with Maese to pick up the load car, which had been left outside of the K-Mart. He followed Maese as Maese drove the car to a storage facility, then picked Maese up, drove to a restaurant with him, and stayed there with Maese for several hours.
 
 
 23
 This case is in some sense similar to United States v. Arias, 923 F.2d 1387 (9th Cir.), cert. denied, 112 S.Ct. 130 (1991), where defendant picked up, and drove in a counter-surveillance manner, a car left at a restaurant by two brothers suspected to be drug dealers. The brothers retrieved the car after defendant had driven it to a different location. The car was found to contain cocaine. Id. at 1388. This court affirmed the district court's finding of probable cause to arrest the defendant. Id.
 
 
 24
 Here, although Ruis did not himself drive the car known to contain drugs, and although there was no counter-surveillance driving, Ruis did drive another person to the load car and followed that person as he drove it to a different location. He then stood by as the other person placed the car in a storage unit, and provided the other person with a ride out of the storage facility. He assisted in a fairly complicated series of transactions clearly aimed at moving a drug-laden vehicle and getting it out of sight.
 
 
 25
 We acknowledge that it is possible that Ruis could have been helping without knowing that the person whom he was assisting was doing anything wrong. See United States v. Hillison, 733 F.2d 692, 697 (9th Cir.1984) (one factor in assessing the significance of a suspect's association with criminal activity is whether the criminality of the activity is such that it would normally be discerned by anyone who was present). Here, although Maese's activities may not have been altogether commonplace--picking up a car left by someone else in a parking lot, having a third person follow behind, putting the car in storage--neither were they patently criminal.
 
 
 26
 We conclude nevertheless that the government established that probable cause existed. The arresting officers were certainly not confined to considering information the arrestee himself may have had about the activities of his companions. They could also look at matters from the outside. They could observe that Ruis's association with criminal activity was contemporaneous with that activity, Hillison, 733 F.2d at 697: his involvement with persons who had discernible ties to the smuggling scheme neatly dovetailed with the activities of those persons on July 8, the day the cross-border smuggling operation took place. More importantly, the officers could reach the common sense judgment, reiterated by the government on appeal, that persons engaged in a very large bribery and drug smuggling scheme are unlikely to let an innocent outsider come with them (and help them) on their most sensitive maneuvers on the very day they are bringing that scheme to fruition. Given these factors, the agents had probable cause to arrest.
 
 
 27
 C. Insertion of Ruis's Key into the Storage Unit Lock
 
 
 28
 Ruis argues that the police violated his Fourth Amendment rights when, without a warrant, they inserted a key they found on his person into the lock on the storage unit. Ruis relies on United States v. Portillo-Reyes, 529 F.2d 844 (9th Cir.1975), cert. denied, 429 U.S. 899 (1976), where this court stated that the insertion of a key into a car door "constituted the beginning of [a] search." Id. at 848. As the government points out, however, this court has subsequently concluded that Portillo-Reyes has been "undermined by intervening decisions of the Supreme Court and this court." United States v. Grandstaff, 813 F.2d 1353, 1358 n. 5 (9th Cir.) (citing, inter alia, United States v. Jacobsen, 466 U.S. 109, 120 (1983), United States v. Place, 462 U.S. 696, 706-07 (1983), and United States v. White, 766 F.2d 1328, 1330-32 (9th Cir.1985)), cert denied, 484 U.S. 837 (1987).
 
 
 29
 The Grandstaff court itself stopped short of holding that the insertion of the key was not a search under the Fourth Amendment. The court assumed without deciding that the insertion constituted a search, and then concluded that a search of such a limited nature as the insertion of a key into a lock is not unreasonable, and that under the "automobile exception," there was no requirement for a warrant. Id. at 1358.
 
 
 30
 In this case, since the lock in question was on a storage unit rather than an automobile, the automobile exception is not available, and the question of whether or not the insertion of the key was a search is squarely presented. We need not resolve it, however. Even if Ruis's Fourth Amendment rights were violated by the insertion of the key, the district court would have been correct in denying the motion to suppress. The fact that the key fit the lock was one piece of evidence included in the application for a warrant to search the storage unit. But even without that fact, there was abundant evidence in the warrant affidavit to establish probable cause to search the storage unit--i.e., the evidence about the bribery scheme, the description of the load car, and the placing of the car in the storage unit. In addition, the warrant affidavit made reference to Dolores's post-arrest confession, in which Dolores admitted that he had agreed to smuggle drugs in the blue Buick in exchange for $10,000. Given the existence of these independent routes to the evidence which Ruis seeks to suppress, suppression is inappropriate. See United States v. Miller, 812 F.2d 1206, 1208 (9th Cir.1987) (applying independent source rule in a situation where probable cause existed even if illegally obtained information was cancelled out).
 
 
 31
 D. Two-Level Enhancement for Obstruction of Justice
 
 
 32
 The district court imposed a two-level enhancement under U.S.S.G. Sec. 3C1.1, based on Ruis's use of an alias. Ruis argues on appeal that the district court erred in imposing the enhancement without first holding an evidentiary hearing. The government responds that Ruis did not request a hearing on this issue below, and that he is not entitled to one in any event.
 
 
 33
 There is a more fundamental error in the district court's sentence. Application Note 4(a) to U.S.S.G. Sec. 3C1.1 states that it is not obstruction of justice to "provid[e] a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense." Commentary in the Guidelines Manual interpreting a guideline "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 113 S.Ct. 1913, 1915 (1993); United States v. Webster, 996 F.2d 209, 211 (9th Cir.1993). Here, the commentary precludes the enhancement imposed by the district court.[4] There is no indication that Ruis's use of an alias impeded the prosecution of the drug-trafficking offenses at issue here.[5]
 
 
 34
 The government may be suggesting that the commentary does not apply because Ruis gave a false name "after" rather than "at" his arrest. But under Application Note 4(b) to Sec. 3C1.1, even "making false statements, not under oath, to law enforcement officers" is not grounds for an enhancement, unless the statements resulted in a significant impediment to the investigation or prosecution of the offense. Thus even if Ruis had persisted in using an alias after his arrest, this would still not be an obstruction of justice. The district court erred in applying an obstruction of justice enhancement.[6]
 
 
 35
 E. Two-Level Enhancement for Aggravating Role
 
 
 36
 Finally, Ruis argues that the district court erred in imposing a two-level enhancement for his aggravating role in the charged offenses. Such an enhancement is authorized under U.S.S.G. Sec. 3B1.1(c) if the defendant was an organizer, leader, manager, or supervisor in the offense.
 
 
 37
 We review application of the Sentencing Guidelines de novo. United States v. Fagan, 996 F.2d 1009, 1017 (9th Cir.1993). We review the district court's factual findings in the sentencing phase for clear error. United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992).
 
 
 38
 The evidence indicating that Ruis played an aggravating role included, first, statements by his codefendants. Maese stated that Ruis had recruited him for both the fuel tank modification scheme and the moving of the load car in this case.[7] Sanudo (against whom charges were dismissed) stated that on another occasion, Ruis had asked him to be a driver and that Sanudo had suspected that something illegal was afoot.[8] In addition, documentary evidence indicated that Ruis had rented, and had access to, the storage space at the Shurgard.
 
 
 39
 In contrast, Ruis argues that he did not know the persons involved with bribing the customs inspector, and that he exposed himself to risk by picking up Maese and renting the storage facility--which an organizer or leader would not do.
 
 
 40
 Taking the evidence as a whole, we must affirm the district court's finding that Ruis was a leader. United States v. Elwood, 999 F.2d 814 (5th Cir.1993), which Ruis relies upon, is distinguishable. In that case, the only "evidence" supporting an upward role adjustment was a conclusory statement in the PSR that the government and the case agents felt that such an adjustment was appropriate. Id. at 817. See also United States v. Patterson, 962 F.2d 409, 414-15 (5th Cir.1992) (unsworn assertion by AUSA that defendant managed and supervised other persons is insufficient). Here, the evidence was more specific: the statements of the codefendants; the documents indicating that Ruis had control of the storage space. Although we believe the question is a close one, we conclude that the district court did not commit clear error in finding that Ruis qualified for a two-point aggravating role adjustment.[9]
 
 
 41
 On the basis of the obstruction of justice upward adjustment, we vacate the sentence and remand for resentencing consistent with this disposition.
 
 
 42
 AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
 
 
 
 *
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 These cases lay to rest Ruis's argument that the application of G.O. 384 constitutes an improper shift of the government's burden to prove probable cause
 
 
 [2]
 Likewise, the assertion that "At no time did I ... act in any manner which would give the agents cause to arrest me" is anything but "specific and detailed."
 
 
 [3]
 We also note that Ruis did not avail himself of any opportunity to make his point after he had found out how the court construed his affidavit. Ruis might have filed a new affidavit in the context of a motion to reconsider. But he did not
 
 
 [4]
 The government's reliance on United States v. Rodriguez-Macias, 914 F.2d 1204 (9th Cir.1990) (per curiam), is erroneous. While that case held that the use of an alias may constitute obstruction of justice, id. at 1205, Rodriguez-Macias was decided before the effective date of the commentary in question. U.S.S.G. App. C (amend. 347) (effective date of commentary is November 1990)
 
 
 [5]
 The district court accepted the government's contention that Ruis gave a false name in order to avoid arrest warrants outstanding against him in other criminal matters. Whether or not he succeeded in stymying the efforts of the prosecution in this way is not clear from the record. But even if he did, that would not show that he hindered the prosecution of the "instant offense."
 
 
 [6]
 Although the government does not raise the issue on appeal, we note that at the sentencing hearing, the district court, over a defense objection, held that if the obstruction of justice enhancement was struck down on appeal, the base offense level could be raised by two points (based on a larger quantity of cocaine), thus yielding the identical sentence
 We decline to recognize such "sentencing in the alternative." The Sentencing Guidelines were not created to rationalize an offense level otherwise considered appropriate by the district court. Instead, the Guidelines are used to calculate an offense level, taking all relevant conduct into account. See U.S.S.G. Sec. 1B1.3. To correct an error in sentencing calculations by considering a factor not previously included in the calculations would be inconsistent with the principle that all relevant factors must be considered in making the initial calculation.
 Permitting "alternate sentences" based on previously excluded factors would also conflict with the goal of minimizing disparity in sentences among similarly situated defendants and maximizing proportionality among defendants of different culpability. See id. ch. 1, pt. A.3, p.s. If district courts can pick and choose which factors they will consider at sentencing, then, inevitably, similarly situated defendants will receive disparate sentences.
 
 
 [7]
 The government summarized Maese's statements in its sentencing memorandum. While Maese's statements themselves do not appear in the record, Ruis does not dispute that they were made
 
 
 [8]
 We note that Sec. 3B1.1 directs courts to look only at "the defendant's role in the offense": thus Sanudo's statement that Ruis tried to recruit him on a different occasion is not directly relevant. It does, however, serve to corroborate Maese's statement
 
 
 [9]
 Ruis also argues that the district court erred in failing to hold an evidentiary hearing on the question of his role in the offense. In our view, given the government's reliance on the testimony of the obviously interested codefendants, the district court might prudently have conducted such a hearing. But the rule Ruis cited repeatedly to the district court, Fed.R.Crim.P. 32(c)(3)(D), does not require an evidentiary hearing. It states only that the district court must make findings as to any disputed allegation relied upon in sentencing. Fed.R.Crim.P. 32(c)(3)(A) does speak to the subject of evidentiary hearings, but consigns the decision whether or not to hold a hearing to the discretion of the court. See also U.S.S.G. Sec. 6A1.3, p.s. (comment.); United States v. Upshaw, 918 F.2d 789, 791 (9th Cir.1990), cert. denied, 499 U.S. 930 (1991). Section 6A1.3 of the Sentencing Guidelines also provides that the defendant must be given an adequate opportunity to present information to the district court regarding disputed sentencing factors. Ruis was given this opportunity: he was free to file objections to the presentence report, and to make oral objections at the sentencing hearing--both of which he did. Ruis did not request an evidentiary hearing for the specific purpose of testing the credibility of his codefendants, and we do not believe he has shown that the district court abused its discretion by imposing sentence without holding an evidentiary hearing