# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2021

Lyle W. Cayce
Clerk

No. 19-10780

United States of America,

*Plaintiff—Appellee*,

*versus*

Ricky Parkerson,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CR-517-1

Before Jolly, Southwick, and Wilson, *Circuit Judges*.

E. Grady Jolly, *Circuit Judge*:

On October 10, 2018, appellant Ricky Parkerson ("Parkerson") was charged in a one-count indictment with the offense of failure to register as a sex offender in violation of 18 U.S.C. § 2250. On March 12, 2019, Parkerson pled guilty without the benefit of a plea agreement. Parkerson's Base Offense Level was calculated in the Presentence Investigation Report ("PSR") as 16. He received a reduction of 3 points for accepting responsibility for his offense and timely notifying the government of his intention to plead guilty, resulting in a total offense level of 13. The PSR reflects that the United States

No. 19-10780

Sentencing Guidelines prescribed an advisory range of 18–24 months imprisonment.

At sentencing, the district court imposed a statutory maximum sentence of 120 months imprisonment. Parkerson appeals, challenging both its procedural and substantive reasonableness. Parkerson's procedural attack on his sentence has two targets: (1) the district court's consideration of a contested account contained in the PSR that was drawn from an August 8, 2016, police report, and (2) its consideration of the opinion of a Dr. Dunham of the Texas Department of Criminal Justice ("TDCJ") on Parkerson's likelihood of re-offending. Both these items of evidence, Parkerson argues, lack sufficient indicia of reliability and thus should not have been considered. The essence of Parkerson's substantive challenge is that his sentence is "shockingly high" and greater than necessary to achieve the sentencing objectives set forth in 18 U.S.C. § 3553(a). Because we find no reversible error, we affirm.

I.

The Supreme Court has directed that federal criminal sentences are to be reviewed in a two-step process, with the reviewing court first considering whether the district court committed any significant procedural errors and only then, if it finds no such errors, reviewing the substantive reasonableness of the sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007). These two steps are "sequential, dispositive inquiries." *United States v. Delgado-Martinez*, 564 F.3d 750, 752 (5th Cir. 2009). If the district court committed any significant procedural error, remand is required unless the proponent of the sentence can establish "that the error did not affect the district court's selection of the sentence imposed." *Id.* at 753 (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). A reviewing court

should only proceed to the second step of the *Gall* inquiry if it finds no procedural error or only harmless error. *Id.*

Sentencing is reviewed *de novo* for procedural error. *United States v. Sanchez-Ledezma*, 630 F.3d 447, 449 (5th Cir. 2011). The factual findings of the district court are reviewed for clear error. *United States v. Harris*, 702 F.3d 226, 229 (5th Cir. 2012).

## II.

The PSR excerpts an August 8, 2016, police report that sets out a narrative recounted by Parkerson's niece to the Seagoville, Texas, police. That narrative is as follows. Parkerson's then-twenty-five-year-old niece received a text message from Parkerson asking her to pick him up at the grocery store. She obliged and picked up Parkerson. He gave her directions to an open field in an isolated area. Both of them got out of the vehicle and walked for about one-and-a-half miles, presumably at Parkerson's direction. There they encountered a fence, which Parkerson's niece told him that she would not cross. Parkerson got angry and pulled a box cutter on her. Frightened, she ran back toward the car while Parkerson chased after her. She was able to jump in the car and drive off, hitting Parkerson with her car in the process. After getting home, she called her mother, who then called the Seagoville Police Department.

No charges were filed in connection with this alleged incident. Parkerson claims to not have even been aware of his niece's allegations until after he was arrested. At sentencing, responding to the objections of defense counsel, Judge Boyle stated, "I think it's a very detailed account. I think it's credible, and I'm going to assign it some weight."

The PSR does not actually include any portion of the police report itself, only a short excerpt. The parties dispute whether that passage exhibits sufficient indicia of reliability to justify its consideration at sentencing.

Defense counsel pointed out, at sentencing, that "[a]ll we have is [the niece's] account. We don't have any corroborating evidence." The government argued that Parkerson's failure to register as a sex offender and his travel to Nevada shortly following the alleged incident corroborated his niece's account. The thrust of this argument seems to be that Parkerson's "flight" from Texas indicated a guilty mind and echoed his behavior after he committed a sexual assault in 1991, when he also traveled to Nevada. Parkerson stated that he went to Nevada because "[M]y dad died. And I—I hadn't seen my dad in 30 years, so I went to see him. It wasn't me running."

Secondly, in confecting the sentence, the district court considered the opinion of TDCJ psychologist Dr. Dunham. In the section of the PSR titled "FACTORS THAT MAY WARRANT DEPARTURE," Probation Officer McDougan included this reference to the opinion of Dr. Dunham: "Furthermore, a TDCJ psychological evaluation indicated the defendant possibly suffered from antisocial personality disorder and paraphilia. The evaluation indicated the defendant represented a high risk for sexual re-offense and suffered from a behavior abnormality that made him likely to engage in future acts of predatory sexual violence." Defense counsel filed objections to this portion of the PSR, arguing that it should be redacted because it did not have sufficient indicia of reliability.

Dr. Dunham's opinion stems from his August 28, 2014, evaluation of Parkerson. He completed a standard Static-99R evaluation, and he also reviewed records provided by the TDCJ Civil Commitment Multidisciplinary Team. The Static-99R is "the most researched and widely used approach to sex offender risk assessment. It is an empirical-actuarial risk assessment tool designed to predict sexual recidivism among adult male sex offenders who have been charged with or convicted of an offense that is judged to have a sexual motivation." Parkerson scored a "3" on the Static-99R, indicating a low-to-moderate risk of re-offending. Dr. Dunham then

apparently went on to render his personal opinion regarding Parkerson's mental health and behavioral issues/disorders on the basis of the record before him, concluding that Parkerson was actually at high risk of re-offending. In effect, Dr. Dunham provided a professional opinion at odds with the Static-99R results. *Id.*

The district court does seem to have given some, if very minimal, weight to Dr. Dunham's opinion. At sentencing, upon hearing defense counsel's objections to Dr. Dunham's opinion, the sentencing judge stated, "I can take both conclusions [i.e., Dr. Dunham's opinion and the results of the Static-99R] and give them as much weight as I think they deserve, which is not much." In determining the sentence to be imposed, the district court focused primarily on Parkerson's criminal history and the need to ensure public safety, stating, "[T]he defendant is a repeat offender of the worst kind…. I think that the risk here is very big. It's a community safety thing that I'm concerned about with him…. [W]e have to keep the community safe." The district court also referenced the fact that Parkerson's previous terms of imprisonment had apparently failed to achieve their intended deterrent effect as well as the § 3553(a) factors of promoting respect for the law, providing just punishment, and deterring others as justifying the sentence imposed. *Id.* Ultimately, the district court imposed a statutory maximum sentence of 120 months imprisonment, a substantial upward variance from the 18–24 months prescribed by the Guidelines.

### III.

### A.

Parkerson's first procedural argument concerns whether the district court erred by considering the alleged encounter with his niece because the PSR account lacks the necessary indicia of reliability. A sentencing court may consider information contained in a PSR if it has an adequate evidentiary

basis. Such information "generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations required by the sentencing guidelines." *United States v. Fitzgerald*, 89 F.3d 218, 223 (5th Cir. 1996) (citation omitted). Furthermore, past criminal conduct not resulting in a conviction may be considered. *United States v. Lopez-Velasquez*, 526 F.3d 804, 807 (5th Cir. 2008) (citation omitted). Moreover, the Sentencing Guidelines provide that "[i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, *provided that the information has sufficient indicia of reliability to support its probable accuracy.*" U.S.S.G. § 6A1.3 (emphasis added). If information in the PSR lacks sufficient indicia of reliability, then it is error for the district court to consider it even if the defendant offers no rebuttal evidence. *Harris*, 702 F.3d at 231. Alternatively, if information in the PSR does bear sufficient indicia of reliability, then the burden shifts to the defendant to offer competent rebuttal evidence. *United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013).

In response, the government argues that the PSR passage at issue meets the relevant standard of reliability. Citing *United States v. Fuentes*, 775 F.3d 213, 220 (5th Cir. 2014), the government observes that, although a district court may not rely on a "bare arrest report" at sentencing, "[i]nformation based on the results of a police investigation, such as an offense report, has been deemed sufficiently reliable by this Court." Here, as the government points out, the PSR sets out the complainant's account in considerable detail. Furthermore, the government argues, Parkerson's own account of the disputed events of August 8, 2016, corroborates his niece's account because he confirms that they were together and that he had a box cutter, even conceding that their stories may otherwise diverge

considerably.[1] *Id.* at 12-13. But, in any event, this court has never held that corroboration is necessary in order for a factual account contained in a PSR to bear sufficient indicia of reliability to support its consideration at sentencing. *Id.* at 13.

Replying to the government's arguments, Parkerson says that simply quoting or paraphrasing the uncorroborated statements of a complainant from a police incident report and including them in a PSR does not elevate those statements to the level of reliability sufficient to give them weight in a sentencing determination. *See United States v. Elwood*, 999 F.2d 814, 817-18 (5th Cir. 1993) ("Bald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR."); *Harris*, 702 F.3d at 230, n.2 ("[M]ere inclusion in the PSR does not convert facts lacking an adequate evidentiary basis with sufficient indicia of reliability into facts a district court may rely upon at sentencing.") (citations omitted).

After considering the parties' respective arguments, we are convinced that the factual account contained in the PSR bears sufficient indicia of reliability to justify its consideration at sentencing. We begin by observing that the account given to the police by Parkerson's niece is quite detailed and specific, including the location of the alleged assault, specific directions as to how they supposedly got there, the nature of the weapon that was allegedly used, and specific details about the alleged assault itself. We find it curious that the defendant did not so much deny or respond to his niece's allegations but, instead, told a story that was entirely detached from the narrative proffered by his niece, whose only points of contact with his niece's account

---

[1] Parkerson's version of events is that "[his niece] was in the backyard smoking that K-2 stuff, and she was blowing it in her kid's face, and I got onto her about it. I was in the backyard, and I was threading this leather up because I was in the craft shop, and I had the box cutter in my hand."

were that, in both, the two of them were together and Parkerson was holding a box cutter, thus corroborating at least those aspects of his niece's story.

We conclude that the niece's account, as reflected in the relevant passage of the PSR, bears sufficient indicia of reliability to meet this court's standard for consideration at sentencing. It is not the sort of conclusory allegation, such as an unsubstantiated assertion by the government that Parkerson assaulted his niece, that was at issue in *Elwood*, 999 F.2d at 817. Neither is it a "bare arrest report." Rather, the PSR contained facts, i.e., statements Parkerson's niece made to the police. The information contained in the PSR is similar to the information at issue in *Fuentes*, 775 F.3d at 220, reliance on which this court condoned. Because this item of evidence bears sufficient indicia of reliability, we find that the district court did not err in considering the account of Parkerson's niece, as contained in the PSR.

## B.

Parkerson next argues that the district court committed a second sentencing procedural error of the same type. He says that the district court improperly considered the opinion of TDCJ psychologist Dr. Dunham to the effect that Parkerson's likelihood of re-offending was high. Parkerson recognizes that the Federal Rules of Evidence do not apply at sentencing. He argues, however, that Federal Rule of Evidence 702 is instructive regarding what indicia of reliability are sufficient to justify reliance on expert opinion testimony in the sentencing context. Here Parkerson argues that only the Static-99R, and not Dr. Dunham's statements opining on Parkerson's condition and likelihood of re-offending, was supported by reliable scientific methodology. It was, therefore, or so Parkerson argues, error for the sentencing court to consider both aspects of Dr. Dunham's evaluation. The government, for its part, hammers the point that the Federal Rules of Evidence do not apply at sentencing and concludes that "[i]n light of the

record as a whole, Parkerson's history of sexual assaults and the 2016 conduct described in paragraph 12, could easily permit the court to accept the TDCJ evaluator's conclusion that Parkerson was at high risk of re-offense."

In considering whether the opinion of Dr. Dunham bears sufficient indicia of reliability to support its consideration, we agree that Dr. Dunham did not support or justify his opinion by reference to any empirically validated methodology. He appears to have been articulating his personal opinion. The fact that the empirically validated test, the Static-99R, indicated a different risk assessment compounds concerns that Dr. Dunham's opinion lacks sufficient indicia of reliability. Nevertheless, it is unnecessary for us to decide whether the district court's consideration of Dr. Dunham's opinion was error because the record indicates that his opinion did not affect the district court's composition of the sentence it imposed.

Indeed, the record is quite clear that the district court would have imposed the same 120-month sentence even if it had given no weight to Dr. Dunham's opinion. The district court, by its own account, gave "not much" weight to the opinion. It considered the opinion in conjunction with the contradictory results of the Static-99R. *Id.* In setting forth its reasons for the sentence, the district court did not mention either component of Dr. Dunham's evaluation. As the government points out, it was Parkerson's criminal history, not the TDCJ evaluation, that led the district court to vary upwards from the advisory range. We thus hold that the district court's treatment of Dr. Dunham's opinion did not constitute a reversible procedural error.

## C.

Because we find that the district court committed no procedural error, either in considering the PSR report of his niece's allegations of assault, or in

its treatment of Dr. Dunham's opinion, we proceed to the second step of the *Gall* analysis and review the sentence for substantive reasonableness. *Gall*, 552 U.S. at 51. A sentence is "reasonable" if the sentencing court did not abuse its discretion. *See Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) ("Our decisions make plain that reasonableness is the label we have given to the familiar abuse-of-discretion standard that applies to *appellate* review of the trial court's sentencing decision.") (citations and internal quotation marks omitted) (emphasis original).

The main thrust of Parkerson's argument on this point is that his sentence is "shockingly high" and greater than necessary to achieve the sentencing objectives set forth in 18 U.S.C. § 3553(a). The "shockingly high" standard, however, is drawn from Second Circuit precedent that does not have any Fifth Circuit analogue. *See United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009) (discussing the Second Circuit "shockingly high" standard); *United States v. Rios-Garza*, 769 F. App'x 186 (5th Cir. 2019) (treating defendant's claim that his sentence was "shockingly high" as a challenge to its substantive reasonableness). We will thus examine whether the district court abused its discretion in applying the statutory factors set forth in § 3553(a).

18 U.S.C. § 3553(a) provides:

The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant; **(2)** the need for the sentence imposed—**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; **(B)** to afford adequate deterrence to criminal conduct; **(C)** to protect the public from further crimes of the defendant; and **(D)** to

> provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner…. (emphasis added).

Parkerson argues that his sentence is greater than necessary to achieve the purposes of § 3553(a). At sentencing, the district court focused primarily on Parkerson's criminal history and the need to ensure public safety. The district court also referenced that Parkerson's previous terms of imprisonment had apparently failed to achieve their intended deterrent effect. The court also cited the § 3553(a) factors of promoting respect for the law, providing just punishment, and deterring others as justifying the sentence imposed.

Given the public safety concerns at issue, when viewed in the light of Parkerson's criminal history, we cannot say that the sentence imposed is substantively unreasonable. Previous sentences involving substantial jail time had not deterred Parkerson from committing additional crimes, including serious offenses involving sexual violence. Based on the record of the sentencing hearing, the district court considered the § 3553(a) factors and found that only a statutory maximum sentence would be sufficient to protect the public from further crimes of the defendant. *Id.* Under these circumstances, it is not our role to second-guess the district court's exercise of its sound discretion, and accordingly we find no error.

## IV.

We sum up: Parkerson challenges both the procedural and substantive reasonableness of his sentence. We have considered his arguments that the district court committed two distinct procedural errors: giving weight to the account of his niece contained in the August 8, 2016, police report and, secondly, considering the opinion of TDCJ psychologist Dr. Dunham. For the reasons stated above, we hold that the district court's treatment of these two items of evidence involved no reversible error. The account given by

No. 19-10780

Parkerson's niece bears sufficient indicia of reliability for the reasons we have set out above. Finally, Parkerson has not shown that Dr. Dunham's opinion affected the sentence imposed. In short, we have found that the district court committed no reversible procedural error.

Because we found that there was no procedural error, we considered the substantive reasonableness of Parkerson's sentence. We held that Parkerson's sentence is not unreasonable. Under the very deferential standard of review applicable here, it would be inappropriate for us to second-guess the district court's application of the § 3553(a) factors. Parkerson's history of sexual violence is sufficient to justify, as necessary to ensure public safety, a statutory maximum sentence for failing to register.

Accordingly, the sentence and the judgment of the district court is, in all respects,

AFFIRMED.