# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 23, 2010

No. 08-20269

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

STEVEN JAY SCHER,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, GARZA, and PRADO, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Stephen Jay Scher, a travel agent, was convicted of wire fraud for using unauthorized waiver codes to obtain illegal discounts on Continental Airlines flights. Complaining that the jury instructions improperly amended the indictment and that the loss calculation method unreasonably inflated Continental's losses, Scher appeals.

I

Continental sells airline tickets to consumers in several ways, including through ticketing agents at airports and through independent travel agencies. To allow selected travel agents to issue tickets at reduced prices normally available with certain limitations, Continental provides "waiver codes." These

codes, when entered into Continental's reservation system, waive otherwise applicable limitations on reduced fares. For example, if a travel agent promises a customer a certain rate and then fails to book the travel early enough to secure the reduced fare, the waiver code allows the agent to secure the advanced purchase reduced fare even though it is no longer available.

Continental security agents review Continental's records to identify possible abuses of the waiver code system. During one of these reviews, an agent determined that 926 unauthorized waiver codes had been used by Travel Center of New Jersey. Eventually, the agent traced these unauthorized codes to Scher. Scher was using the unauthorized codes to issue tickets at a reduced fare. He charged his customers a price lower than the actual full-fare coach price but higher than the unauthorized reduced fare he obtained with the waiver codes. Scher and his accomplices kept the difference between the unauthorized reduced fare and the price the customers paid. Continental lost the difference between the actual full-fare coach price and the unauthorized reduced fare.

The government indicted Scher on five counts of wire fraud, alleging a scheme to obtain money and property by utilizing the unauthorized waiver codes to issue unauthorized reduced fare tickets. At trial, Scher admitted that he paid Jose Nieto, a Continental ticketing agent, for the unauthorized waiver codes and that the waivers allowed for a significant savings over the cost of a full fare. The jury convicted Scher on all five counts: (1) conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 371 and 1343; and (2)–(5) wire fraud in violation of §§ 1343, 1346, and 2.

The presentence report ("PSR") calculated an advisory guidelines range of forty-one to fifty-one months. The most significant factor in determining the advisory range was the loss calculation, which resulted in a fourteen-point increase to Scher's base offense level under U.S.S.G. § 2F1.1(b)(1)(O). Scher objected to the methodology used to compute the loss and presented his own loss

No. 08-20269

estimate based on data provided by an aviation consulting group. Ultimately, the district court adopted the PSR loss calculation. The court did, however, grant a two-point reduction in Scher's offense level for accepting responsibility. The court sentenced Scher to thirty-three months of imprisonment and three years of supervised release, ordered restitution in the amount of $1,211,011, and made a special assessment of $500. Scher filed a timely notice of appeal.

## II

## A

The district court instructed the jury that it could find Scher guilty of wire fraud if it found beyond a reasonable doubt that Scher knowingly created a scheme to obtain money, property, or other things of value. Scher argues that the inclusion of the phrase "other things of value" constructively amended the indictment by adding a basis for conviction not alleged in the indictment.

Scher did not raise this argument during trial. Thus, our review is for plain error. *United States v. Reyes*, 102 F.3d 1361, 1364 (5th Cir. 1996). Under the plain error standard, we will reverse only if "(1) there is an error, (2) that is clear or obvious, and (3) that affects [the defendant's] substantial rights." *United States v. Ferguson*, 211 F.3d 878, 886 (5th Cir. 2000). Even if these factors are met, "the decision to correct the forfeited error is within the sound discretion of the court, and the court will not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 735–36 (1993)).

A constructive amendment occurs when the trial court "through its instructions and facts it permits in evidence, allows proof of an essential element of the crime on an alternative basis provided by the statute but not charged in the indictment." *United States v. Phillips*, 477 F.3d 215, 222 (5th Cir. 2007) (quotation omitted). In evaluating whether a constructive amendment has occurred, we consider "whether the jury instruction, taken as a whole, is a

3

correct statement of the law and whether it clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them." *United States v. Guidry*, 406 F.3d 314, 321 (5th Cir. 2005) (quotation omitted). We "scrutinize any difference between an indictment and a jury instruction" and "will reverse only if that difference allows the defendant to be convicted of a separate crime from the one for which he was indicted." *United States v. Nunez*, 180 F.3d 227, 231 (5th Cir. 1999). Otherwise, a defendant must "show how the variance in the language between the jury charge and the indictment so severely prejudiced his defense that it requires reversal under harmless error review." *Id.*

Here, the balance of the instructions focused the jury's attention squarely on the correct legal standard. Correct statements of the law bookended the district court's incorrect statement. First, the district court said that Count One charged Scher with conspiring to obtain "money and property." Next, the district court said that Counts Two through Five also charged Scher with perpetrating a scheme to obtain "money or property." After those correct statements, the district court incorrectly stated that the jury should find Scher guilty of involvement in a "scheme to defraud" under 18 U.S.C. § 1343 if it found that he schemed to obtain "money, property, or other things of value." Finally, the district court correctly stated that a "scheme to defraud" includes any scheme to deprive another of money or property. Scher's argument, that the indictment was constructively amended because the court's definition of "scheme to defraud" on one occasion included the language "or other things of value," ignores the balance of the instructions, which were on the whole correct. *See e.g.*, *United States v. Leahy*, 82 F.3d 624, 631 (5th Cir. 1996) (finding no constructive amendment where one misstatement of the law was made but the balance of the instructions were correct).

No. 08-20269

Further, the government did not seek to expand the indictment by presenting a theory that Scher defrauded Continental of "other things of value" such as goodwill. At trial, the government presented substantial evidence of Continental's loss of money. Indeed, the entire trial focused on how Scher used the codes to sell tickets below cost so that he could illegally profit at Continental's expense. The government referred repeatedly to money in its summation, and the defense also characterized the effect of the waiver codes in terms of price. Simply put, "the overriding and predominant theory of the government's case" on the fraud counts involved Continental's loss of money. *United States v. Richerson*, 833 F.2d 1147, 1157 (5th Cir. 1987).

Because, given the evidence presented, Scher could not have been convicted of a crime other than that for which he was indicted, the trial court's single reference to "other things of value" in an otherwise correct jury instruction does not constitute a constructive amendment. Accordingly, we will not reverse Scher's conviction.

B

Scher also challenges the district court's loss calculation method for the purposes of both the amount-of-loss enhancement and restitution. To determine the amount of loss to Continental, the district court started with the full-fare, one-way price for each ticket, then subtracted the amount actually paid to Continental, as well as any applicable discounts. Scher argues that this method of loss calculation grossly inflated Continental's losses.

"This court reviews a district court's factual findings at sentencing for clear error and its legal analysis de novo." *United States v. Olis*, 429 F.3d 540, 545 (5th Cir. 2005). A district court's loss calculation under the Sentencing Guidelines is a factual finding reviewed for clear error.[1] *United States v.*

---

[1] Scher argues that de novo review applies because he is challenging the loss calculation methodology. Although he is correct that de novo review applies when the methodology is

*Bieganowski*, 313 F.3d 264, 294–95 (5th Cir. 2002). "Factual findings are not clearly erroneous if they are plausible in light of the record read as a whole." *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995).

"Ordinarily, when property is taken . . . the loss is the fair market value of the particular property at issue ." U.S.S.G. § 2B1.1 cmt. n.2 (2000); *see also United States v. Onyiego*, 286 F.3d 249, 255 (5th Cir. 2002). Where, as here, market value is difficult to determine, a sentencing court may use "other reasonable means to ascertain the level of loss to the victim." *Onyiego*, 286 F.3d at 256 (citation omitted); *see also* U.S.S.G. § 2F1.1 n.9 (2000) ("For the purposes of subsection (b)(1), the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information.").

In making factual determinations at sentencing, the district court is entitled to rely upon the information in the PSR as long as the information bears some indicia of reliability. *United States v. Shipley*, 963 F.2d 56, 59 (5th Cir. 1992). The defendant bears the burden of presenting rebuttal evidence to demonstrate that the information in the PSR is inaccurate or materially untrue. *United States v. Washington*, 480 F.3d 309, 320 (5th Cir. 2007).

In the instant case, Scher did not provide rebuttal evidence that the district court deemed sufficient to undermine the information in the PSR. The PSR relied on the evidence submitted at trial, specifically spreadsheets produced by Continental's fraud investigator, detailing the fraudulent tickets issued and their corresponding value to Continental. Scher neither provided the district

---

challenged, *see United States v. Randall*, 157 F.3d 328, 330 (5th Cir. 1998), the parties do not dispute methodology. Scher and the government agree that the proper methodology for calculating the loss to Continental is to subtract the after-waiver price that Scher paid to Continental from the actual value of the ticket absent the illegal waiver. In other words, the disagreement centers on the actual value of the tickets absent the illegal waiver. The court's determination of the actual value is a factual finding that we review for clear error.

court with a viable alternative nor demonstrated that the information in the PSR was inaccurate or materially untrue. Although Scher did commission a consulting group to make an alternative loss calculation, neither Scher nor his counsel seemed to understand the most basic precepts of the alternate methodology that produced their loss estimate or seemed able to identify the price data upon which it relied. Their lack of understanding could certainly undermine the district court's confidence in the proposed alternative and the loss calculation it produced. *See Van Gorp Mfg., Inc. v. Townley Indus. Plastics, Inc.*, 464 F.2d 16, 19 (5th Cir. 1972) (noting that lack of basic understanding regarding subject of testimony undermines its validity).

In his briefing, Scher presents a number of plausible arguments that the loss amount was too high—(1) that Scher's unauthorized price discrimination brought Continental additional revenue that offset any loss; (2) that the government's use of one-way fares resulted in higher loss amounts than can be attributed to the round-trip fares actually purchased; and (3) that several of the fares used in the district court's calculation were much higher than what customers would have actually paid. But, the arguments are not supported by evidence. Indeed, in response to similar objections in codefendant Nieto's case, Continental re-examined its initial loss amount in the instant case, taking into account the potential for reduced fares, and revised downward by approximately $100,000 to arrive at the current figure. Further, neither Continental's profit margin nor the prospect that passengers would have flown with another airline without the lower fare provided by the waiver code mitigates Scher's criminal activities.

Although we have some misgivings about the calculated value of Continental's loss, Scher simply failed to produce reliable evidence supporting an alternate number or demonstrating that the information in the PSR was inaccurate or materially untrue. As Scher failed to present sufficient rebuttal

evidence, we cannot say that the district court clearly erred in adopting the PSR's factual finding regarding the loss amount. *See United States v. Tampico*, 297 F.3d 396, 404 (5th Cir. 2002).

Because the district court used the same figures to calculate the restitution amount that it used to calculate the damages amount, we likewise find that Scher has not produced sufficient evidence to show that the restitution award was an abuse of discretion. *See Onyiego*, 286 F.3d at 256.

AFFIRMED.