# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 25, 2010

No. 09-40197
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

RAUL SEGOVIA, also known as Raul Cegovia, Jr., also known as Negro,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:08-CR-177-1

Before GARWOOD, SMITH, and STEWART, Circuit Judges.

PER CURIAM:[*]

Raul Segovia, proceeding *pro se*, appeals his guilty plea conviction and February 2009 120-month sentence imposed for conspiracy to distribute 100 kilograms or more of marihuana. Segovia argues that the Government breached his plea agreement, that the district court erred by upwardly departing from the Sentencing Guidelines based on evidence of his involvement in a drug shipment that was not included in the charged offense, that the district court erred by considering a dismissed charge in his criminal history, and that the district court

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

erred by enhancing his offense level based on his leadership role in the conspiracy.

## FACTS AND PROCEEDINGS BELOW

Segovia entered into a written plea agreement with the United States Attorney in the Southern District of West Virginia on February 20, 2008. Under this agreement, Segovia agreed to plead guilty to conspiracy, "[f]rom at least March 31, 2004 to on or about March 8, 2007," to distribute 100 kilograms or more of marihuana in violation of 21 U.S.C. § 846. He and the Government both agreed to waive their rights to appeal the reasonableness of the sentence imposed, so long as that sentence fell within the range established by the United States Sentencing Commission's *Guidelines Manual* (Sentencing Guidelines or Guidelines). The agreement stated that this waiver did not "prevent either party from arguing for a sentence above or below the guideline range at or before the sentencing hearing, nor does it prevent either party from seeking appellate review of the District Court's calculation of the guideline range, if an objection is properly reserved." Finally, the plea agreement provided that sentencing was within the sole discretion of the district court and that the Government reserved the right to inform the court of all relevant facts and conduct, to present evidence and argument relevant to the factors in 18 U.S.C. § 3553(a), and to respond to any arguments made to the district court on Segovia's behalf.

Segovia was transferred to Laredo, in the Southern District of Texas, where he pleaded guilty pursuant to the foregoing agreement. Segovia's Pre-Sentence Investigation Report (PSR) recommended that the court hold him responsible for an extra 1500 kilograms of marihuana as relevant conduct in addition to the 170 kilograms referenced in the hearing in Laredo before the Magistrate Judge on this plea of guilty to conspiring to distribute. *See* United States Sentencing Commission, *Guidelines Manual*, §§1B1.3(a)(1)(B), 2D1.1 (Nov. 2007). This additional marihuana had been seized from a tractor-trailer in January 2007. According to the PSR, the tractor-trailer's driver had identified

2

Segovia as the owner of the marihuana, and Segovia's father had been observed loading the trailer. Segovia's father had arrived on the scene driving Segovia's wife's car. The PSR also recommended that Segovia's sentence be enhanced for his leadership role in the criminal enterprise and reduced because of his acceptance of responsibility.

At sentencing, the district court stated that it had no doubt Segovia was involved in the January 2007 shipment of 1500 kilograms of marihuana. But it also stated that it was "highly questionable" that this shipment had any relation to the conspiracy to which Segovia had pleaded guilty. Accordingly, it declined to find that the January 2007 shipment was relevant conduct to Segovia's conspiracy offense and calculated Segovia's Sentencing Guidelines range to be eighty-four to 105 months' imprisonment (based on an adjusted offense level of 25 and criminal history category IV). However, the district court stated that it could not ignore the January 2007 shipment completely, so it upwardly departed from the Guidelines and imposed a sentence of 120 months. The district court also indicated that this upward departure was warranted because the PSR had failed to recommend an enhancement for a prior drug conviction on Segovia's record. *See* 21 U.S.C. § 841(b)(1)(B)(vii). Segovia did not object to the upward departure at sentencing.

## DISCUSSION

On appeal, Segovia argues that his sentence should be vacated (1) because the Government breached the plea agreement, (2) because the district court violated his Sixth Amendment rights by considering uncharged conduct in its calculation of the Guidelines and its upward departure, (3) because it improperly upwardly departed based on the January 2007 shipment, (4) because it improperly increased his criminal history score based on a driving while intoxicated (DWI) charge that was dismissed, and (5)

because it enhanced his guideline range for having a leadership role in the conspiracy.[1]  We affirm.

## I. Plea Agreement

Because Segovia did not argue that the Government breached the agreement in the district court, review is for plain error.  *See Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009).

> "'[P]lain-error review' . . . involves four steps, or prongs.  First, there must be an error or defect—some sort of '[d]eviation from a legal rule'—that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant. . . .  Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. . . .  Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings.' . . .  Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error '"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" *Id.* (quoting *United States v. Olano*, 113 S.Ct. 1770, 1776–79 (1993) (quoting *United States v. Atkinson*, 56 S.Ct. 391, 392 (1936))) (emphasis and alteration in original).

In considering whether a plea agreement has been breached, this court considers whether "the government's conduct is consistent with the parties' reasonable understanding of the agreement."  *United States v. Gonzalez*, 309 F.3d 882, 886 (5th Cir. 2002) (internal quotation marks and citation omitted).

The plea agreement provided that the Government could inform the probation officer and the court about relevant facts and conduct concerning Segovia.  It also provided that either party could argue for a sentence below or above the guideline range.  Based on the fact that the January 2007 shipment took place during the time period of the charged conspiracy, that Segovia's

---

[1] Although we hold that the district court's departure from the Guidelines was proper, we must nevertheless address the Guidelines issues raised by Segovia, since a district court must properly calculate a defendant's guideline range before departing from it.  *See United States v. Saldana*, 427 F.3d 298, 310 & n.45 (5th Cir. 2005).

family vehicle and his father were involved in the transaction, and that DeLeon's statement linked Segovia to the shipment, it was reasonable for the Government to argue that Segovia's involvement with the Laredo drugs was relevant conduct. *See* U.S.S.G. § 1B1.3(a)(1)(B). It was also reasonable for the Government to present the district court with relevant facts about Segovia's role in the criminal activity. The Government did not breach the plea agreement by making arguments it was expressly permitted to make under the terms of the agreement. Thus, no clear or obvious error occurred regarding the validity of the plea.

## II. Sixth Amendment Arguments

Segovia's second assignment of error is that the district court violated his Sixth Amendment rights and the precedents of *Apprendi v. New Jersey*, 120 S.Ct. 2348(2000), *Blakely v. Washington*, 124 S.Ct. 2531(2004), and *United States v. Booker*, 125 S.Ct. 738 (2005), by basing his sentence on facts that were not found beyond a reasonable doubt by a jury. He complained that he was held accountable for drugs that were not included in the indictment and that he disputed possessing.

The authority Segovia cites is inapposite. *Booker* reaffirmed the holdings of *Apprendi* and *Blakely* and held that the statutory provisions making the Sentencing Guidelines mandatory were unconstitutional. *See Booker*, 125 S.Ct. at 755–57.

*Booker*'s holding that the Sentencing Guidelines were advisory, rather than mandatory, rendered *Blakely* inapplicable to enhancements made under the Guidelines. *See United States v. Rita*, 127 S.Ct. 2456, 2465–67 (2007). In *United States v. Rita*, the Supreme Court confirmed that *Blakely* and *Apprendi* do not prevent federal district courts from enhancing sentences under the Guidelines. *Rita*, 127 S.Ct. at 2465–66.

Segovia's conspiracy conviction carried a statutory maximum of forty years' imprisonment. He was only sentenced to ten years. Therefore, *Apprendi*

is inapplicable to his case. In sentencing him, the district court expressly declined to sentence him according to the recommended range prescribed by the Sentencing Guidelines. Therefore, neither *Blakely* nor *Booker* applies to his case. The district court's sentence did not violate Segovia's Sixth Amendment rights.

## III. Upward Departure for the January 2007 Shipment

Segovia's third assignment of error is that the district court upwardly departed from his Guidelines sentence based in part on its finding that he played some role in the uncharged January 2007 shipment of 1500 kilograms of marihuana. Segovia argues that this was error, because he was not charged with any crime in connection with this shipment. Segovia's counsel did not object to the district court's consideration of the January 2007 shipment at sentencing. Therefore, our review is for plain error.

The Sentencing Guidelines are not mandatory. *See Booker*, 125 S.Ct. at 755–57. Thus, after calculating a defendant's guideline range properly, a district court may depart from it based on the factors listed in 18 U.S.C. § 3553(a). *See United States v. Herrera-Garduno*, 519 F.3d 526, 529–31 (5th Cir. 2008). One of the factors listed in Section 3553(a)(1) that may serve as the basis for a departure is "the history and characteristics of the defendant . . . ." 18 U.S.C.A. § 3553(a)(1) (West 2000); *Herrera-Garduno*, 519 F.3d at 531.

"A district court can determine a criminal defendant's sentence based . . . on facts it believes the government has proven by a preponderance of the evidence." *United States v. Jackson*, 978 F.2d 903, 913 (5th Cir. 1992). The district court stated that it did not have "the slightest doubt" that Segovia was involved with the January 2007 shipment. This statement more than satisfies the preponderance standard. Furthermore, based on our review of the information contained in Segovia's PSR, we cannot say that the district court clearly erred by making this finding.

6

After calculating Segovia's guideline range, the district court stated that it was concerned that a sentence within that range would not reflect his involvement in the massive January 2007 shipment. In other words, the district court was concerned that a sentence pursuant to the Sentencing Guidelines would not accurately reflect the criminal history of Segovia. This was a legitimate ground for departure under 18 U.S.C. § 3553(a).[2]  Therefore, the district court did not err by upwardly departing from the guideline range based on its finding that Segovia had been involved in the January 2007 shipment.

Post-*Booker*, "[t]he sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence." *United States v. Johnson*, 445 F.3d 793, 798 (5th Cir. 2008) (citation omitted). Therefore, the district court did not violate the Sixth Amendment in finding and considering all facts relevant to the sentencing.

## IV. Increased Criminal History Score Based on a DWI Charge

Segovia argues for the first time on appeal that the district court erred in assigning him two criminal history points based on a driving while intoxicated charge that was dismissed on April 9, 1999. However, the PSR did not recommend, and the district court did not assess, criminal history points for this dismissed offense. Rather, Segovia received two criminal history points for a DWI offense that occurred on June 27, 1997, to which he pleaded guilty on August 21, 1998. He was sentenced to sixty days' imprisonment and had his

---

[2] It is irrelevant for the purposes of our 18 U.S.C. § 3553(a) analysis that the district court concluded that the January 2007 shipment could not constitute relevant conduct under the Sentencing Guidelines. The district court may consider more conduct under Section 3553(a) than it may consider under the Guidelines. *See, e.g.*, *United States v. Vitrano*, 495 F.3d 387, 390 (7th Cir. 2007) ("Although provisions in the guidelines . . . allow a district judge to enhance a defendant's advisory guideline range only for conduct that is 'part of the same course of conduct or common scheme or plan as the offense of conviction,' once the applicable range is determined, the judge's ability to choose which sentence to impose is not so constrained.").

criminal history score increased for that offense, not the April 1999 DWI. Segovia has not rebutted the finding in the PSR that he pleaded guilty to a DWI offense on August 21, 1998, nor has he presented any evidence showing that such conviction was subsequently set aside or the charge dismissed. Thus, there was no clear or obvious error, and his substantial rights were not affected by the consideration of the DWI sentence. *See United States v. Scher*, 601 F.3d 408, 413 (5th Cir. 2010) ("In making factual determinations at sentencing, the district court is entitled to rely upon the information in the PSR as long as the information bears some indicia of reliability. . . . The defendant bears the burden of presenting rebuttal evidence to demonstrate that the information in the PSR is inaccurate or materially untrue."). The district court did not plainly err in calculating Segovia's criminal history points. *See Puckett*, 129 S. Ct. at 1429.

## V. Leadership Enhancement

Segovia also challenges for the first time on appeal the district court's enhancement of his offense level for having a leadership role in the criminal activity. The district court found that this enhancement was warranted, and Segovia has not provided this court with any reason to find that this was plain error. The PSR stated that he sought to make drug sales to persons outside of Laredo, Texas, recruited drivers, organized the transportation of the marihuana, and collected the drug proceeds. Absent rebuttal evidence, the district court was entitled to rely on the PSR. *See Scher*, 601 F.3d at 413. Therefore, the district court did not plainly err in making the two-point enhancement for a leadership role in the offense. *See* U.S.S.G. § 3B1.1(c); § 3B1.1, comment. (n.4).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.