# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 22, 2010

Lyle W. Cayce
Clerk

No. 09-20696
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ANSELMO GONZALEZ-MENDOZA,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CR-191-3

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

Anselmo Gonzalez-Mendoza (Gonzalez) appeals the 37-month sentence imposed after he pleaded guilty to one count of conspiracy to transport and harbor unlawful aliens. Gonzalez contends that the district court erred in applying a six-level enhancement to his offense level based on his having smuggled, transported, or harbored at least 25 aliens under U.S.S.G. § 2L1.1(b)(2) and in applying a two-level enhancement under § 2L1.1(b)(8) based on the involuntary detention of an alien through threat or coercion, or in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

connection with a demand for payment. We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. *See United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

The district court adopted the calculation in the presentence report (PSR) that the conspiracy involved the smuggling, transporting, or harboring of at least 25 unlawful aliens. That calculation was based in part on the discovery of 17 unlawful aliens being harbored by Gonzalez and his co-conspirators at a house in Houston. Admissions by Gonzalez, statements by some of his co-conspirators, and interviews with some of the unlawful aliens who had been harbored in the Houston residence, all described the conspirators' transporting and harboring of numerous unlawful aliens in the weeks before the authorities raided the house in Houston. Gonzalez, by his own admission, was at the house approximately 20 days before his arrest. Also, the PSR stated that inside the house authorities found a ledger containing multiple pages of names, telephone numbers, and corresponding dollar amounts, which authorities believed to be a record of the conspirators' smuggling activities. In addition to relying upon the factual basis, the district court was entitled to rely upon the information in the PSR because it bore "some indicia of reliability." *United States v. Scher*, 601 F.3d 408, 413 (5th Cir. 2010). Gonzalez has failed to meet his burden of presenting rebuttal evidence to demonstrate that the information in the PSR is inaccurate or materially untrue. *See id.* The record shows that the district court's application of the six-level enhancement was plausible in light of the record as a whole. *United States v. Gonzales*, 436 F.3d 560, 584 (5th Cir. 2006); *see also United States v. Cabrera*, 288 F.3d 163, 166-73 (5th Cir. 2002).

Both the factual basis that Gonzalez admitted was true and the PSR reported statements of numerous unlawful aliens who described how Gonzalez and his co-conspirators had detained unlawful aliens under armed guard at the Houston residence and demanded additional payments in exchange for their

No. 09-20696

release.  Also, agents recovered firearms from the residence.  Thus, the district court's application of the two-level enhancement was likewise plausible in light of the record as a whole.  *See Gonzales*, 436 F.3d at 584; *see also Scher*, 601 F.3d at 413.

AFFIRMED.