# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 13, 2013

No. 12-50711

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARIO OSCAR ACHAVAL, also known as Mario Achaval, also known as Mario L. Achaval, also known as Mario Llero Achaval, also known as Mario O. Achaval,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:11-CR-963-1

Before JOLLY, JONES, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

For his two issues in contesting jury convictions on four counts of production of false identification documents, in violation of 18 U.S.C. § 1028 (a)(1), Mario Oscar Achaval, a citizen of Argentina ordered removed in 2010, claims: insufficiency of the evidence; and constructive amendment of his indictment by omission of "false" in the jury instruction on the elements of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50711

offense. The conviction for count one is VACATED; the convictions for counts two through four are AFFIRMED; REMANDED for re-sentencing.

I.

Achaval retained Pascual Madrigal as his attorney for the removal proceedings. After being ordered removed, Achaval was granted a writ of habeas corpus and released to the care of his attorney, who provided him lodging pending deportation. During his stay with Madrigal, Achaval was entrusted with money to pay some of Madrigal's bills.

Unbeknownst to the attorney, Achaval also began to use Madrigal's business credit card to buy military uniforms. When Achaval refused to turn over receipts he claimed were in his backpack, Madrigal's wife looked inside it and found a FedEx Office (formerly Kinko's) envelope containing cards bearing Achaval's name and photograph, and displaying United States military credentials, including the rank of lieutenant colonel (LTC), date of issue, security clearance, and an image of a square integrated circuit chip, included in United States Department of Defense common access cards (CACs) since 2000.

When Madrigal confronted Achaval with the envelope, he told the attorney he planned to return to the United States after his deportation and use the documents to cross the border because customs "just pass [soldiers] through, especially if they are in full uniform and have their identification". Madrigal turned the information over to the police, who arrested Achaval at a hotel, where they also found uniforms, insignia, dog tags, and other military attire and equipment.

At trial, Government exhibits 1–4A were the false CACs found in the envelope in Achaval's backpack. All have his photograph, list his rank as "LTC" (lieutenant colonel), and are on Sony photo paper with the words "Print by Sony" repeated on the back.

No. 12-50711

Exhibit 1, corresponding to count one, bears the seal of the Department of the Army, the words "Armed Forces of the United States" and "Army", and the corresponding pay grade "O-5", along with an issue date of "2010OCT17" and an expiration date of "2011OCT17". The identification card is uncut and printed on a sheet of photo paper that is three by five inches. A CAC, however, is the size of a credit card, 2.125 by 3.37 inches.

On the other hand, exhibits 2–4A are the size of a CAC. They include the designation "Security Clearance TS/SCI L5", and feature the issue date "OCT10". Exhibit 2, corresponding to count two, bears the seal of, and words, "United States Special Operations Command". Exhibit 3, corresponding to count three, bears the seal of, and words, "Task Force ODIN". And, exhibit 4A, corresponding to count four, bears the seal of the United States Southern Command and the word "SOUTHCOM".

Exhibit 9 is a plastic card with a magnetic strip on the back, found with exhibits 1–4A.

United States Army Special Agent James Moss was present as Agents searched Achaval's hotel room and discovered numerous military uniforms, clothing items, and insignias. Agent Moss testified he had seen scanned images, as well as the printouts, of the false CACs. He also testified, based on his experience, concerning the use and acceptance of CACs at military bases and points of entry into the United States. And, the Agent verified Achaval had never served in the United States military in any capacity and had never been lawfully issued a CAC or other access card.

Achaval's motion for judgment of acquittal at the close of the Government's case was denied. Subsequently, he did not present evidence.

The jury was instructed that, to find Achaval guilty of producing false documents, the Government was required to prove, beyond a reasonable doubt: (1) Achaval "knowingly produced an identification document", (2) "he did so

3

No. 12-50711

without lawful authority", and (3) "the identification document is or appears to be issued by or under the authority of the United States". The court then defined "identification document" and "false identification document". Finally, the court instructed that an identification document not issued by the United States "appears to be [one] issued by or under the authority of the United States government when a reasonable person of ordinary intelligence would believe that it was issued by or under the authority of the United States government". Achaval did not object to the instructions.

## II.

## A.

Because Achaval moved for judgment of acquittal based on insufficiency of the evidence, he preserved that issue for review. *E.g.*, *United States v. Resio-Trejo*, 45 F.3d 907, 910 n.6 (5th Cir. 1995). Therefore, the denial of the motion is reviewed *de novo*. *E.g.*, *United States v. Steen*, 634 F.3d 822, 825 (5th Cir. 2011). Along that line, all evidence and inferences are viewed "in the light most favorable to the verdict", to determine whether "a rational jur[or] could have found the essential elements" proven beyond a reasonable doubt. *United States v. Valdez*, 453 F.3d 252, 256 (5th Cir. 2006) (citation and internal quotation marks omitted).

Achaval claims the evidence was insufficient to prove, beyond a reasonable doubt, that he "knowingly and without lawful authority produc[ed] . . . a false identification document". 18 U.S.C. § 1028 (a)(1). In that regard, the district court, incorporating verbatim the language of 18 U.S.C. § 1028(d)(4), defined a false identification document: "a document of a type intended or commonly accepted for the purposes of identification of individuals that– (A) is not issued by or under the authority of a governmental entity . . . and . . . (B) appears to be issued by or under the authority of the United States Government . . .". Achaval challenges only the sufficiency of the evidence on whether he produced a

document that "appear[ed] to be issued by or under the authority of the United States Government".

*At Achaval's request*, the district court incorporated language from a fourth-circuit opinion in the instructions:  the documents could "appear[] to be issued by or under the authority of the United States government" *only* if "a reasonable person of ordinary intelligence would believe that [the document] was issued by or under the authority of the United States government".  *See United States v. Jaensch*, 665 F.3d 83, 91 (4th Cir. 2011) *cert. denied*, 132 S. Ct. 2118 (U.S. 2012).  (Our court has not delineated clearly the metes and bounds of the "appears to be" inquiry under § 1028(d)(4).  *See, e.g.*, *United States v. Villarreal*, 253 F.3d 831, 836-37 (5th Cir. 2001) (noting, but declining to reach, "appears to be" question where court did not instruct jury on it).  Because the instruction is not challenged on appeal, we do not do so here.  Again, the "appears to be" definition provided the jury was the one requested by Achaval.)

Achaval bases his contentions partly on the theory his documents are incomplete.  Section 1028(f) establishes the same punishments for production of false identification documents as for their *attempted* production.  Achaval was not charged with attempt, however, but rather with the completed offense on all four counts.  *See* 18 U.S.C. § 1028(f).  Achaval relies on the plastic card with a faux magnetic strip, found loose inside the envelope with the cards, as proof he never completed them.

At Achaval's request, the district court instructed the jury that a false identification document must "appear[] to be issued by or under the authority of the United States government".  The level of completion bears, of course, upon the "appears to be issued" requirement.  The three by five inch sheet of photo paper involved in count one features an image of a CAC printed in the middle.  The rounded corners of the CAC can be seen shaded on the outline of the card, and the remaining area is white.  On the back of the sheet, the words "Print by

No. 12-50711

Sony" are repeated diagonally. The document has the thickness and weight of photo paper. Viewing the evidence in the light most favorable to the verdict, a rational juror would *not* find that a reasonable person of ordinary intelligence would believe that this document appears to be issued by the Government.

The documents charged in counts two through four are also on photo paper with the words "Print by Sony" repeated diagonally on the reverse side. Unlike the document at issue in count one, they are the size of a CAC.

Agent Moss, a 31-year veteran of the United States Army with experience as a counterintelligence special agent and as part of the Joint Terrorism Task Force, testified he had been present for the arrest of Achaval and the search of his hotel room, which uncovered United States military uniforms and other military-related items. Agent Moss first testified (on visual inspection of scans of the documents) the images looked like CACs. Agent Moss testified that, upon physical inspection of each identification card, however, he "immediately knew that it was not a card" and conceded the exhibits were "mockups of cards . . . not a government access card". But, Agent Moss also testified that, based on his experience, a uniformed man presenting one of the cards would have been given access to a military base. According to Agent Moss, a guard manning an entry gate at a military facility likely would not stop a lieutenant colonel who presented one of the cards as his credentials to gain access. Agent Moss stated he had returned to the United States using his military identification card "several times" and Achaval's cards "could be used to reenter the United States as well". In that regard, when Achaval told Madrigal of his plans to return, he noted the lax treatment by airport screeners of uniformed military officers with CACs.

Agent Moss also pointed out several discrepancies between Government-issued CACs and the versions produced by Achaval. But, Achaval's cards were not, for example, touting a preposterous title or issued by a non-existent agency.

6

No. 12-50711

His documents declared him to be a lieutenant colonel in the United States Army, with a security clearance to match his rank.

Importantly, neither the normal use, nor Achaval's subjective intended use, of the documents would necessitate extensive examination but, rather, as Agent Moss testified, Achaval would likely be able to use the document to enter a base without being questioned by lower-ranking guards at the gate. Although Agent Moss admitted readily that close inspection would reveal the cards to be mere mockups, he is not the standard under § 1028(d)(4). Instead, for this appeal, the unobjected-to standard is the one presented to the jury through the "reasonable person" instruction, requested by Achaval, and adopted by the district court. A rational juror could have found, beyond a reasonable doubt, that, consistent with the jury charge, a reasonable person of ordinary intelligence would believe that the documents for counts two through four were issued by or under the authority of the United States Government.

### B.

For his other issue, Achaval maintains the indictment was constructively amended because the district court improperly instructed the jury on the elements of producing "identification documents", rather than "false identification documents". The statutory definition of "false identification document" includes the "appears to be" requirement, while the definition of "identification document" does not. *Compare* 18 U.S.C. § 1028(d)(3) *with* 18 U.S.C. § 1028(d)(4).

A defendant who has been indicted by a grand jury has a Fifth Amendment right to be tried solely on charges made by that grand jury. *Stirone v. United States*, 361 U.S. 212, 215-18 (1960). "The indictment cannot be broadened or altered except by the grand jury." *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir. 1991) (citation and internal quotation marks omitted). A constructive amendment of the indictment "occurs when the trial court through

7

its instructions and facts it permits in evidence, allows proof of an essential element of the crime on an alternative basis provided by the statute but not charged in the indictment". *United States v. Scher*, 601 F.3d 408, 411 (5th Cir. 2010) (citation and internal quotation marks omitted).

In reviewing a jury charge claimed to have amended an indictment, this court begins by considering "whether the jury instruction, taken as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them". *Id.* (citation and internal quotation marks omitted).  This court "scrutinize[s] any difference between an indictment and a jury instruction and will reverse only if that difference allows the defendant to be convicted of a separate crime from the one for which he was indicted".  *Id.* (citation and internal quotation marks omitted).

Because Achaval did not object in district court to the now-challenged jury instruction, this issue is reviewed only for plain error.  *See, e.g.*, *id.*; *United States v. Daniels*, 252 F.3d 411, 414 (5th Cir. 2001).  To show reversible plain error, Achaval must show a forfeited error that is clear or obvious and that affects his substantial rights.  *See Puckett v. United States*, 556 U.S. 129, 135 (2009).  If he makes such a showing, this court has the discretion to correct the error, but it will do so only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *See id.*

Achaval claims the court's omission of the word "false" from the elements of the crime and its allowance of evidence regarding the appearance of the cards *if completed* were clear errors that affected his substantial rights by allowing conviction on a crime other than the one charged.  To the contrary, the court included as the third element of the charged offense:  "That the identification document is or *appears to be* issued by or under the authority of the United States". (Emphasis added.)  As detailed above, a "false identification document"

must appear to be issued by the United States Government; there is no similar requirement for an "identification document". And, as noted, at Achaval's request, the court included the instruction on how to determine whether a document "appears to be" issued by the United States. In addition, as discussed *supra*, the jury was instructed on the definition of a false identification document.

The requisite clear or obvious error is lacking. Although the district court omitted the word "false" when listing the elements of the charged offense, its instruction was a correct statement of the law on that offense. Thus, by finding Achaval guilty, the jury necessarily determined that the documents appeared to be issued by, or under, the authority of the Government, therefore finding him guilty of producing false identification documents. *See Zafiro v. United States*, 506 U.S. 534, 540 (1993) (stating jury presumed to follow court's instructions).

### III.

For the foregoing reasons, the conviction on count one is VACATED; the convictions for counts two through four are AFFIRMED; and this matter is REMANDED to district court for re-sentencing consistent with this opinion.