## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-41237

United States Court of Appeals
Fifth Circuit

**FILED**

January 9, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

RIGOBERTO MUNOZ-VARGAS,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:11-CR-966-1

Before JONES, WIENER, and GRAVES, Circuit Judges.

WIENER, Circuit Judge:[*]

Defendant-Appellant Rigoberto Munoz-Vargas appeals the sentence imposed following his guilty plea convictions for possession with intent to distribute approximately 1.5 kilograms of methamphetamine and for being an alien in possession of a firearm. Munoz-Vargas contends that the district court erred when calculating his base offense level because it took into account relevant conduct involved in dismissed charges. We review the district court's fact findings on drug quantity and relevant conduct for clear error, and, finding none, we affirm.[1]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009) (relevant conduct); *United*

Because Munoz-Vargas raised objections but did not present evidence to rebut the information in the presentence investigation report ("PSR") concerning the relevant conduct, the district court was entitled to rely on the PSR without further inquiry.[2]   In calculating a base offense level of 38, the district court found that Munoz-Vargas was responsible for a total in excess of 30,000 kilograms of marijuana or its equivalent.[3]

According to the PSR, the 1.49 kilograms of methamphetamine seized in November 2011 was the equivalent of 29,800 kilograms of marijuana.   In a post-arrest interview, Munoz-Vargas admitted that he had transported marijuana hidden in the tires of the load vehicles from Houston, Texas, to Little Rock, Arkansas, and that he had traveled to Kansas to take possession of $136,500 in drug proceeds.   Evidence established that the load vehicles typically carried at least 45 kilograms of marijuana and that Munoz-Vargas had traveled to Little Rock at least three times, including once in October 2011, just one month before the methamphetamine seizure.   When combined with three 45-kilogram loads transported to Little Rock, the $136,500 in drug proceeds–the equivalent of 103 kilograms of marijuana–is more than enough to reach the 30,000 kilograms of marijuana necessary to justify a base offense level of 38.[4]   Therefore, even if we were to ignore the various other seizures of drugs and drug proceeds described in the PSR, Munoz-Vargas has not shown

---

*States v. Betancourt*, 422 F3d. 240, 246 (5th Cir. 2005) (drug quantity); *see also United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008) ("There is no clear error if the district court's finding is plausible in light of the record as a whole.").

[2] *See United States v. Scher*, 601 F.3d 408, 413 (5th Cir. 2010).

[3] *See* U.S.S.G. § 2D1.1(c)(1).

[4] *See id.*   In drug distribution cases, we broadly define what constitutes the "same course of conduct" or "common scheme or plan," components of relevant conduct under Section 1B1.3 of the Guidelines.   *United States v. Rhine*, 583 F.3d 878, 885 (5th Cir. 2009).

that the district court clearly erred in determining that his base offense level was 38.

Munoz-Vargas suggests that the district court also erred in applying a two-level increase under Section 2D1.1(b)(12) of the United States Sentencing Guidelines because: (1) the apartment where the methamphetamine was found was not a place of manufacturing or distribution; (2) no precursor chemicals were present; (3) there was no evidence that the methamphetamine was distributed to couriers from the apartment; and (4) he did not have supervisory control or substantial effective control over the apartment. The enhancement applies if the defendant knowingly maintains a premises for the purpose of distributing a controlled substance, including storage of a controlled substance for the purpose of distribution.[5] Munoz-Vargas admitted that he paid the rent for the apartment where the methamphetamine was found and that he used the scales found in the apartment to weigh drugs. He and his girlfriend were the only adults who had access to the apartment. His nephew admitted that he had delivered three separate loads of drugs to Munoz-Vargas at the apartment. The evidence also established an alternative basis for application of the two-level increase: Numerous coconspirators transported drugs to a residence that Munoz-Vargas shared with his wife, from which he then arranged to transport the drugs to other states. Munoz-Vargas also used this residence to store drug proceeds and arranged to transport the proceeds from the residence to Mexico. In light of the foregoing, Munoz-Vargas has not shown that the application of the enhancement was clearly erroneous.[6]

Munoz-Vargas also contends that the district court erred in applying a two-level sentencing enhancement under Section 3B1.1 of the Guidelines for

---

[5] *See* U.S.S.G. § 2D1.1, comment (n.17).

[6] *See United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005).

his role as a manager or supervisor in the offense because the court based the application on relevant conduct that should not have been considered.   The PSR amply supports the district court's findings by showing that Munoz-Vargas recruited, supervised, and paid numerous couriers to transport marijuana and other drugs from Mexico to his apartment or his residence in Houston and then to transport the drugs to other states.   The district court's finding that he was a manager or a supervisor was thus plausible in view of the record as a whole and supports the sentencing enhancement.[7]

Finally, Munoz-Vargas insists that the district court erred in applying a two-level enhancement under Section 2D1.1(b)(14) of the Guidelines, which applied because he had received an aggravating role adjustment under § 3B1.1 and was "directly involved in the importation of a controlled substance."   The PSR recounted several specific instances when Munoz-Vargas directed individuals in the importation of marijuana from Mexico and, if successful, to his residence in Houston.   The district court's finding that Munoz-Vargas was directly involved in the importation of controlled substances is therefore plausible in view of the record as a whole.[8]

AFFIRMED.

---

[7] *See United States v. Cooper,*   274 F.3d 230, 247 (5th Cir. 2001); *Villanueva,* 408 F.3d at 203.

[8] *See United States v. Rodriguez,* 666 F.3d 944, 946 (5th Cir.), *cert. denied,* 132 S. Ct. 2115 (2012).

GRAVES, Circuit Judge, concurring in part and dissenting in part.

Because I would find that the district court erred in calculating the base offense level based on relevant conduct and in applying the manager and importation enhancements, I would reverse on those issues.   Therefore, I respectfully dissent in part.

The majority finds that, because Munoz-Vargas raised objections but did not present evidence to rebut the information in the presentence investigation report (PSR) concerning the relevant conduct, the district court was entitled to rely on the PSR without further inquiry.   The majority further cites *United States v. Scher*, 601 F.3d 408, 413 (5th Cir. 2010).   While this is a correct statement of the law, it skips one very important step.   As this court said in *Scher*, "[i]n making factual determinations at sentencing, the district court is entitled to rely upon the information in the PSR *as long as the information bears some indicia of reliability*."   *Id.* (citing *United States v. Shipley*, 963 F.2d 56, 59 (5th Cir.1992)).   (Emphasis added).

Munoz-Vargas asserts that the district court clearly erred in its application of the relevant conduct provisions of U.S.S.G. § 1B1.3(a)(1) and (2) to calculate his base offense level under U.S.S.G. § 2D1.1(c).   Section 1B1.3 provides that the base offense level and specific offense characteristics shall be determined on the basis of the following:

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. . . .

No. 12-41237

U.S.S.G. § 1B1.3(a)(1)(A), (B).

The United States Supreme Court has held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). *See also United States v. Thomas*, 690 F.3d 358, 375 (5th Cir. 2012).

The commentary to the sentencing guidelines provides that the concepts of "common plan or scheme" and "same course of conduct" are closely related:

> (A) Common scheme or plan. For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi. For example, the conduct of five defendants who together defrauded a group of investors by computer manipulations that unlawfully transferred funds over an eighteen-month period would qualify as a common scheme or plan on the basis of any of the above listed factors; i.e., the commonality of victims (the same investors were defrauded on an ongoing basis), commonality of offenders (the conduct constituted an ongoing conspiracy), commonality of purpose (to defraud the group of investors), or similarity of modus operandi (the same or similar computer manipulations were used to execute the scheme).
>
> (B) Same course of conduct. Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required. For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity. The nature of the offenses may also

be a relevant consideration (e.g., a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals).

U.S.S.G. § 1B1.3, comment 9.

Even similar offenses involving drug distribution are not the "same course of conduct" where the necessary factor(s) are not present.  *See United States v. Wall*, 180 F.3d 641, 646 (5th Cir. 1999).  In drug distribution cases, this court has "broadly defined what constitutes the same course of conduct or common scheme or plan."  *United States v. Rhine*, 583 F.3d 878, 885 (5th Cir. 2009).  In *Rhine*, this court also walks through the analysis to be used in determining relevant conduct.  *Id.* at 885-559.  As set out previously, "for two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3, comment 9(A).  However, "the analysis cannot be too broad, otherwise almost any uncharged criminal activity can be painted as similar in at least one respect to the charged criminal conduct."  *United States v. Ortiz*, 613 F.3d 550, 557 (5th Cir. 2010) (internal marks and citations omitted).

Further, as stated previously, the factors to be considered to determine whether offenses are part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.  U.S.S.G. § 1B1.3, comment 9(B).

Here, Munoz-Vargas pleaded guilty to one count of possession with intent to distribute more than 50 grams of methamphetamine (meth) and one count of alien in possession of a firearm.  The meth was discovered on November 15, 2011, during a consent search of an apartment Munoz-Vargas shared with his girlfriend.  Munoz-Vargas admitted that the 1.3 kilograms of

meth and a .40 caliber handgun found in a closet in the apartment were his. The "related" conduct involved twelve dismissed counts of possession with intent to distribute marijuana and cocaine during the time period of March 8, 2009, to April 13, 2011. The marijuana and the cocaine were hidden inside non-factory compartments inside the tires of Chevrolet and/or GMC vehicles throughout the United States and involved accomplices other than the girlfriend.

The district court may adopt the facts contained in a PSR without further inquiry if the facts have an adequate basis with sufficient indicia of reliability and the defendant does not rebut the evidence or otherwise demonstrate it is unreliable. *United States v. Cabrera*, 288 F.3d 163, 173-74 (5th Cir. 2002). Confronted with an objection to the findings in the PSR, the party seeking an adjustment in the base offense level, the Government, must prove by a preponderance of the evidence that the adjustment is warranted. *See United States v. Patterson*, 962 F.2d 409, 415 (5th Cir. 1992); *United States v. Elwood*, 999 F.2d 814, 817 (5th Cir. 1993). However, "[b]ald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR." *Elwood*, 999 F.2d at 817-818.

The findings in the PSR do not have an adequate basis with a sufficient indicia of reliability. They are merely bald, conclusionary statements that Munoz-Vargas is accountable for the marijuana equivalent of $565,950, which is 492.50 kilograms. The probation officer responded to Munoz-Vargas' objections to the PSR by discussing the consistency of the modus operandi in the various marijuana/cocaine counts, with no comparison to the meth count. The probation officer then makes the conclusionary statement that, "[b]ased on the foregoing evidence, the drug and money seizures linked to Munoz-Vargas and the instant offense were sufficiently connected to each other by at least two common factors, that is, *similar accomplices* and *modus operandi*. Accordingly, the offenses constituted part of a *common scheme or plan*."

8

(Emphasis original).   Notwithstanding that the findings in the PSR do not have an adequate basis with a sufficient indicia of reliability, from a practical standpoint, it is impossible to rebut evidence that does not exist.   The PSR does not establish any accomplices in the meth count similar to the marijuana/cocaine counts.   The PSR also does not establish any similarity in modus operandi between the meth count and the marijuana/cocaine counts. The PSR establishes similarity in accomplices and modus operandi between the various marijuana and cocaine counts, and then merely makes the bald, conclusionary statement that those similarities also apply to the meth count without any supporting evidence whatsoever.   There is no requirement that Munoz-Vargas somehow rebut evidence that was not even included in the PSR. More importantly, once Munoz-Vargas objected, the Government had the burden of proving by a preponderance of the evidence that the adjustment was warranted.   As indicated by the Government's response to the objection, it failed to do this and merely offered another bald, conclusionary statement. Because the district court erred in calculating the base offense level, I would reverse on this issue.

Further, as I would find that the marijuana/cocaine counts were not relevant conduct, the two-level sentencing enhancement under Section 3B1.1 of the Guidelines for being a manager is inapplicable.   Without the aggravating role adjustment under Section 3B1.1, there can be no two-level enhancement under Section 2D1.1(b)(14) of the Guidelines.   In both the PSR and at the hearing, the Government offered evidence of the importation of marijuana and cocaine.   There was no evidence offered or allegation made regarding the importation of meth.   Therefore, the district court's statement that "there is evidence that [Munoz-Vargas] was directly involved in the importation of the methamphetamine" is not plausible in view of the record as a whole.   Thus, I would also reverse on these issues.

Accordingly, I respectfully dissent in part.