GRAVES, Circuit Judge,
concurring in part and dissenting in part.
Because I would find that the district court erred in calculating the base offense level based on relevant conduct and in applying the manager and importation enhancements, I would reverse on those issues. Therefore, I respectfully dissent in part.
The majority finds that, because Munoz-Vargas raised objections but did not present evidence to rebut the information in the presentence investigation report (PSR) concerning the relevant conduct, the district court was entitled to rely on the PSR without further inquiry. The majority further cites United States v. Scher, 601 F.3d 408, 413 (5th Cir.2010). While this is a correct statement of the law, it skips one very important step. As this court said in Scher, “[i]n making factual determinations at sentencing, the district court is entitled to rely upon the information in the PSR as long as the information bears some indi-cia of reliability.” Id. (citing United States v. Shipley, 963 F.2d 56, 59 (5th Cir.1992)). (Emphasis added).
Munoz-Vargas asserts that the district court clearly erred in its application of the relevant conduct provisions of U.S.S.G. § lB1.3(a)(l) and (2) to calculate his base offense level under U.S.S.G. § 2Dl.l(c). Section 1B1.3 provides that the base offense level and specific offense characteristics shall be determined on the basis of the following:
(1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.... U.S.S.G. § lB1.3(a)(l)(A), (B).
The United States Supreme Court has held that “a jury’s verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.” United States v. Watts, 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). See also United States v. Thomas, 690 F.3d 358, 375 (5th Cir.2012).
The commentary to the sentencing guidelines provides that the concepts of “common plan or scheme” and “same course of conduct” are closely related:
(A) Common scheme or plan. For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus oper-andi. For example, the conduct of five defendants who together defrauded a *210 group of investors by computer manipulations that unlawfully transferred funds over an eighteen-month period would qualify as a common scheme or plan on the basis of any of the above listed factors; i.e., the commonality of victims (the same investors were defrauded on an ongoing basis), commonality of offenders (the conduct constituted an ongoing conspiracy), commonality of purpose (to defraud the group of investors), or similarity of modus operandi (the same or similar computer manipulations were used to execute the scheme).
(B) Same course of conduct. Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required. For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity. The nature of the offenses may also be a relevant consideration (e.g., a defendant’s failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals).
U.S.S.G. § 1B1.3, comment 9.
Even similar offenses involving drug distribution are not the “same course of conduct” where the necessary factor(s) are not present. See United States v. Wall, 180 F.3d 641, 646 (5th Cir.1999). In drug distribution cases, this court has “broadly defined what constitutes the same course of conduct or common scheme or plan.” United States v. Rhine, 583 F.3d 878, 885 (5th Cir.2009). In Rhine, this court also walks through the analysis to be used in determining relevant conduct. Id. at 885-559. As set out previously, “for two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi.” U.S.S.G. § 1B1.3, comment 9(A). However, “the analysis cannot be too broad, otherwise almost any uncharged criminal activity can be painted as similar in at least one respect to the charged criminal conduct.” United States v. Ortiz, 613 F.3d 550, 557 (5th Cir.2010) (internal marks and citations omitted).
Further, as stated previously, the factors to be considered to determine whether offenses are part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. U.S.S.G. § 1B1.3, comment 9(B).
Here, Munoz-Vargás pleaded guilty to one count of possession with intent to distribute more than 50 grams of methamphetamine (meth) and one count of alien in possession of a firearm. The meth was discovered on November 15, 2011, during a consent search of an apartment Munoz-Vargas shared with his girlfriend. Munoz-Vargas admitted that the 1.3 kilograms of meth and a .40 caliber handgun *211 found in a closet in the apartment were his. The “related” conduct involved twelve dismissed counts of possession with intent to distribute marijuana and cocaine during the time period of March 8, 2009, to April 13, 2011. The marijuana and the cocaine were hidden inside non-factory compartments inside the tires of Chevrolet and/or GMC vehicles throughout the United States and involved accomplices other than the girlfriend.
The district court may adopt the facts contained in a PSR without further inquiry if the facts have an adequate basis with sufficient indicia of reliability and the defendant does not rebut the evidence or otherwise demonstrate it is unreliable. United States v. Cabrera, 288 F.3d 163, 173-74 (5th Cir.2002). Confronted with an objection to the findings in the PSR, the party seeking an adjustment in the base offense level, the Government, must prove by a preponderance of the evidence that the adjustment is warranted. See United States v. Patterson, 962 F.2d 409, 415 (5th Cir.1992); United States v. Elwood, 999 F.2d 814, 817 (5th Cir.1993). However, “[bjald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR.” Elwood, 999 F.2d at 817-818.
The findings in the PSR do not have an adequate basis with a sufficient indicia of reliability. They are merely bald, conclu-sionary statements that Munoz-Vargas is accountable for the marijuana equivalent of $565,950, which is 492.50 kilograms. The probation officer responded to Munoz-Vargas’ objections to the PSR by discussing the consistency of the modus oper-andi in the various marijuana/cocaine counts, with no comparison to the meth count. The probation officer then makes the conclusionary statement that, “[biased on the foregoing evidence, the drug and money seizures linked to MunozVargas and the instant offense were sufficiently connected to each other by at least two common factors, that is, similar accomplices and modus operandi. Accordingly, the offenses constituted part of a common scheme or plan.” (Emphasis original). Notwithstanding that the findings in the PSR do not have an adequate basis with a sufficient indicia of reliability, from a practical standpoint, it is impossible to rebut evidence that does not exist. The PSR does not establish any accomplices in the meth count similar to the marijuana/cocaine counts. The PSR also does not establish any similarity in modus operandi between the meth count and the marijuana/cocaine counts. The PSR establishes similarity in accomplices and modus oper-andi between the various marijuana and cocaine counts, and then merely makes the bald, conclusionary statement that those similarities also apply to the meth count without any supporting evidence whatsoever. There is no requirement that Munoz-Vargas somehow rebut evidence that was not even included in the PSR. More importantly, once Munoz-Vargas objected, the Government had the burden of proving by a preponderance of the evidence that the adjustment was warranted. As indicated by the Government’s response to the objection, it failed to do this and merely offered another bald, conclusionary statement. Because the district court erred in calculating the base offense level, I would reverse on this issue.
Further, as I would find that the marijuana/cocaine counts were not relevant conduct, the two-level sentencing enhancement under Section 3B1.1 of the Guidelines for being a manager is inapplicable. Without the aggravating role adjustment under Section 3B1.1, there can be no two-level enhancement under Section 2Dl.l(b)(14) of the Guidelines. In both the PSR and at the hearing, the Government offered evidence of the importation *212 of marijuana and cocaine. There was no evidence offered or allegation made regarding the importation of meth. Therefore, the district court’s statement that “there is evidence that [Munoz-Vargas] was directly involved in the importation of the methamphetamine” is not plausible in view of the record as a whole. Thus, I would also reverse on these issues.
Accordingly, I respectfully dissent in part.